IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02692-MEH

LUPITA LEWIS,

      Plaintiff,

v.

JAMES T. POWERS,
NATIONAL FEDERATION FOR THE BLIND, COLORADO,
COLORADO CENTER FOR THE BLIND,
CITY OF LITTLETON, COLORADO, and
CZ FAMBO HOLDINGS LLC d/b/a Chubby's,

      Defendants.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant National Federation for the Blind, Colorado's ("NFBC")

Motion for Summary Judgment [filed December 21, 2016; ECF No. 73].  The motion is fully

briefed, and the Court finds oral argument would not materially assist in its adjudication of the

motion.  Based on the record herein and for the reasons that follow, the Court grants in part and

denies in part the NFBC's motion.[1]

## BACKGROUND

**II.**     **Procedural History**

      Plaintiff Lupita Lewis ("Lewis") initiated this action on December 12, 2015, then filed the

operative First Amended Verified Complaint ("FAC") as a matter of course on February 11, 2016.

---

[1]On November 18, 2015, the parties consented to this Court's jurisdiction pursuant to 28
U.S.C. § 636(c).  *See* ECF No. 14.

ECF No. 11.  To provide context for the Court's analysis, the Court will set forth the following pertinent allegations asserted by Lewis in the FAC:

Lewis was diagnosed with an eye disease when she was seven years old.  She lost her sight over several years, and at all relevant times she has been and remains legally blind.

Defendant Colorado Center for the Blind ("CCB") is located in the City of Littleton (City) and "provides innovative teaching techniques, daily challenges and self-confidence that are the building blocks of independence, opportunity and success" for visually disabled persons.  Lewis, a resident of Oregon at the time, attended CCB three times.  First, in May and/or June 2012, Lewis participated in CCB's Assistive Technology internship program through the Oregon Federation for the Blind ("OFB").  She was tasked by OFB to vet CCB's program and evaluate its instructors so that OFB could determine whether to send its participants to the center.  Lewis also wished to hone her city navigation skills because she had been living in rural DeSchutes County for a significant time, and navigation skills for rural and urban environments are different.  At all relevant times, CCB required its participants to take public transportation to travel around the metropolitan area, so that they might gain confidence in their ability to travel independently.

Lewis returned to CCB from Oregon for the second time between February 2013 through mid-year, to participate again in the Assistive Technology Internship Program and returned a third time between September 2013 and early January 2014.  Participants of the CCB program, including Lewis, resided at the McGeorge Mountain Terrace Apartments (the "Residence"). The Residence is a 24-unit apartment complex with two buildings located within the City about two miles from the CCB, and is situated north of W. Bowles Ave. ("Bowles") and on the west side of South Lowell Blvd. ("Lowell") (5871-73 S. Lowell Blvd., Littleton, Colorado).  At all relevant times, Lowell and Bowles were public thoroughfares open to and used by the residents of the City and of Arapahoe and Jefferson Counties in Colorado.

In late 2012 and/or early 2013, the sidewalk, curb, and gutters on the west side of Lowell were rebuilt by the Denver Water Department, but no work was done on the

sidewalk, curb and gutters on the east side of Lowell. A handicapped crosswalk was constructed at the intersection of Lowell and Lowell Way. At the relevant time, there were two bus lines that ran between CCB and the Residence. The 36L bus line operated from the Littleton Downtown Station west along Bowles to Lowell and then north to the intersection of Lowell and Lowell Way. The 59 bus line stopped a short distance east of the northeast corner of Bowles and Lowell and then continued west on Bowles. The 59 bus stop was a short distance east of the northeast corner of Bowles and Lowell.

For anyone, including visually disabled persons such as Lewis, to get from the 59 bus stop near the intersection of Bowles and Lowell to the Residence, the most direct route is to walk west on Bowles to Lowell, then north on the east side of Lowell to a crosswalk at the intersection of Lowell and Lowell Way (the "Intersection"), then go west across Lowell into the Residence. Defendant CZ Fambo Holdings LLC ("Chubby's") is a restaurant located just north[2] of the Intersection. Anyone walking north on the east side of Lowell toward the Residence must traverse Chubby's 164-foot frontage on Lowell (the "Frontage"), which leads into the parking lot. There is no discernable curb within the Frontage, other than the two-inch-or-less edge of the cement gutter on Lowell.

On December 12, 2013, Lewis took the 59 bus to the Residence from the CCB at about 8:30 p.m. and started walking north toward the Residence on the east side of Lowell. At that time and place it was dark, but the weather was dry and visibility was good. That night Lewis wore an international orange parka and was navigating with her NFB-standard reflective white cane. However, Lewis lost her way in the Frontage and wandered into the traffic lanes of northbound Lowell. Defendant James T. Powers ("Powers") turned north from Bowles onto Lowell and struck Lewis approximately 255 feet north of the Intersection. The impact threw Lewis 38 feet. Lewis suffered injuries, including without limitation moderate traumatic brain injury; a fractured right fibula; a torn left rotator cuff; cervical, thoracic, and lumbar pain and bulging and/or herniated discs; permanent

---

[2]Based on the entire description of the area and route of travel alleged by Plaintiff, the Court assumes the location of the restaurant is actually "south" of the Intersection and that this is, in fact, a typographical error.

impairment; severe post-traumatic stress disorder; and severe clinical depression. FAC, ECF No. 11.

Based on these and other allegations, Lewis asserts four claims against Defendants: negligence against Powers; negligence against the entity Defendants National Federation for the Blind ("NFB"), NFBC, CCB, the City, and Chubby's; violations of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA") against the "public entity" Defendants; and a violation of Title III of the ADA against Chubby's. *Id.* Lewis seeks recovery for compensatory damages and injunctive and declaratory relief pursuant to the statutes. *Id.* at 14-16.

Powers, the City, and NFBC filed answers, but CCB and NFB responded to the FAC by filing motions to dismiss, arguing Plaintiff failed to allege plausible facts demonstrating they owed a duty of care to Lewis; the exclusive remedy for Lewis' claim for injuries was pursuant to the Colorado Premises Liability Act ("CPLA"); and they were not public entities under Title II of the ADA and the Rehabilitation Act, but even if they were, the Plaintiff failed to give notice of her claims as required by the Colorado Governmental Immunity Act ("CGIA"). ECF Nos. 33, 34. The Court granted NFB's motion and dismissed the claims against it, but granted the CCB's motion only as to the ADA claim and denied it as to the negligence and Rehabilitation Act claims. ECF No. 61.

The case has proceeded through discovery, and NFBC filed the present motion on December 21, 2016, well before the April 24, 2017 deadline for dispositive motions. *See* ECF No. 53. NFBC argues that, like NFB, it did not purchase and does not own the apartment building at which Lewis resided at the relevant time, it has no relationship whatsoever with Lewis and, thus, does not owe her a duty of care, it is not a public entity necessary for the ADA claim, and it operated no program

or activity from which Lewis was excluded or denied benefits necessary for the Rehabilitation Act claim.

Lewis counters that her investigation of the entities demonstrates NFBC and CCB are "integrated enterprises" sufficient to hold the NFBC liable for her discrimination claims.  ECF No. 78.  She also requests that, if the evidence she has presented is insufficient to determine whether the entities are "integrated," she be permitted to take discovery on the issue before the Court resolves the motion.  *Id.*

NFBC replies that Lewis did not dispute any of its arguments in the motion but, rather, seeks to apply a test that has been previously applied only to employment discrimination claims which are not at issue here.  Accordingly, NFBC argues that the test should not be applied; but, even if it were, the test would demonstrate CCB and NFBC are not "integrated enterprises."

## I.    Statement of Facts

The Court makes the following findings of fact viewed in the light most favorable to Lewis, who is the non-moving party in this matter.

1.    A Special Warranty Deed executed January 13, 2012 reflects the purchase of property at 5871 S. Lowell Blvd., Littleton, CO 80123 in the amount of $2,415,000.00 by Rocky Mountain Center for the Blind ("RMCB"), a Colorado Non-Profit Corporation, from Friendly Property, LLC. Ex. B, ECF No. 73-2.

2.    On October 26, 2012, Scott C. Labarre, President of the NFBC, delivered a "report" at the NFBC Annual Convention during which he commended the NFBC's "chief program," the CCB, as "the living, breathing embodiment of who we are. It is the application of our philosophy to real life." Mr. Labarre referred to the CCB repeatedly as "ours" and reported,

On May 11, 2012, we cut the ribbon and officially opened McGeorge Mountain Terrace. This is our very own apartment [sic] where our Center students can live and put their independent living skills to the test. We have always rented student apartments, of course, but this beautiful complex is ours. Due to our success and status in the community as recognized by the Karl Smith estate and others, we had the financial capacity and maturity to purchase this 2.5 million dollar facility.

Ex. 2, ECF No. 78-2 at 8–9.

3.      In the February 2013 edition of "The Blind Coloradan, Newsletter of the National Federation of the Blind of Colorado," Mr. Labarre informed readers of "an in-person public Board Meeting of the NFB of Colorado in March," and stated, "Currently, we are targeting March 2nd at *our* Colorado Center for the Blind but this has not been set in stone." *Id.* at 4 (emphasis added).

4.      The NFBC is not a state or local governmental entity, or other instrumentality of a state or local government or the National Railroad Passenger Corporation.  Affidavit of Michelle Chacon, December 16, 2016 ("Chacon Aff."), ¶ 8, ECF No. 73-1.

5.      On November 1, 2014, Mr. Labarre of the NFBC issued his "2014 Presidential Report" in which he touted the CCB as the "single most important program that *we* operate." Ex. 1, ECF No. 78-1 (emphasis added).  He also stated, "The Center is part of our family and we can always count on students and staff participating in our chapters and divisions and showing up at our various affiliate events. We may have different corporate bodies but we are of one mind and soul." *Id.*

6.      A form "Articles of Incorporation of a Colorado Nonprofit Corporation" dated January 27, 1994 reflects that the assets of the Rocky Mountain Center for the Blind "upon dissolution will be distributed to the National Federation of the Blind of Colorado." Ex. 4, ECF No. 78-4.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant

summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006,

1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).   "[T]he content of summary judgment evidence must be generally admissible and . . .  if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).   "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

NFBC seeks summary judgment in its favor on the three claims Lewis brings against it for negligence, violations of Title II of the ADA, and violations of the Rehabilitation Act.  Lewis does not rebut NFBC's claim that it is not a governmental entity and, therefore, the Court will enter summary judgment in the NFBC's favor on the ADA claim.  *See* 42 U.S.C. §§ 12131(1), 12132. The Court will now proceed to determine whether Lewis raises genuine issues of material fact as to her negligence and Rehabilitation Act claims against NFBC.

## I.     Negligence Claim

For her second claim against NFBC, Lewis must demonstrate: "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005) (citing *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002)).  "A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit." *Id.*  "Whether a defendant in a particular negligence action owes a legal duty to the plaintiff is not a question of fact but is a question of law to be determined by the court." *Id.* at 448.  "In deciding whether a duty exists,

[courts] have traditionally examined (1) the nature of the relationship between the parties and (2) a particular set of public policy factors. Either or both may confer a duty or inform the scope of the duty." *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015) (en banc). The Court will examine each in turn.

A.    <u>Nature of the Relationship Between Lewis and Defendant NFBC</u>

In looking at the nature of the parties' relationship and "determining whether a defendant owes a duty to a particular plaintiff, the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm." *Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98, 105 (Colo. App. 2008) (quoting *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002)).

Lewis alleges that NFBC "knew or should have known that visually disabled persons living at the Residence would use the public sidewalk on the east side of Lowell as a path of travel to gain access to the Residence," but it "took no steps to render the curb and sidewalk on the east side of Lowell accessible to disabled persons, including without limitation visually disabled persons such as Ms. Lewis living at the Residence." FAC, ¶¶ 65, 67. NFBC contends Lewis cannot demonstrate it possessed a legal duty of care, particularly since NFBC neither purchased nor possesses the Residence or any property on the east side of Lowell, and since the NFBC is not involved with the CCB's individualized education program. Lewis counters that NFBC, CCB, and the owner of the Residence, RMCB, are "integrated enterprises," and she appears to assert she had a "special relationship" with these entities that gives rise to a duty of care.

It is undisputed that Lewis' allegations reflect "nonfeasance" on the part of NFBC. "[I]n nonfeasance cases, the plaintiff has the added burden of establishing that a special relationship exists

between the parties such that social policy justifies the imposition of a duty to act" because "in misfeasance the actor has created a new risk, and in nonfeasance the actor has simply preserved the status quo[; thus], the situations in which nonfeasance leads to liability are more circumscribed than those for misfeasance." *Montoya*, 216 P.3d at 105; *see also Perreira v. State*, 768 P.2d 1198, 1208 (Colo. 1989) (en banc) (in Colorado, absent a special relationship, a person generally has no duty *to take action* for the protection of another even if it is reasonably apparent that such action is necessary to protect the other person from injury or peril) (emphasis added); *Groh v. Westin Operator, LLC*, 352 P.3d 472, 478 (Colo. App. 2013) ("nonfeasance liability exists in a limited group of special relationships between parties") (quoting *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58 (Colo. 1987)).

Despite her allegations to the contrary, Lewis does not seem to refute the fact that the RMCB purchased the Residence in 2012; rather, although vague, Lewis appears to argue that the NFBC and RMCB are "integrated enterprises" and, thus, they together have a special relationship with Lewis through ownership of the Residence and owe her a duty of care.[3]  Lewis also appears to argue that the NFBC and CCB are integrated for purposes of demonstrating a special relationship through the Rehabilitation Act.  NFBC replies that the "integrated enterprises" test has been applied *only* to employment discrimination claims but, even if the Court were to apply it here, the facts demonstrate the NFBC, RMCB, and CCB are not "integrated."

---

[3]Although Lewis argues the NFBC and CCB "may be held jointly liable to Ms. Lewis for disability discrimination pursuant to § 504 of the Rehabilitation Act," Lewis' argument concerning "integrated enterprises" comes just after discussion of the "special relationship" requirement for demonstrating a duty for a negligence claim and begins, "NFBC ignores legal precedent in the Tenth and many other Circuits utilizing the integrated enterprise test . . . ." Resp., ECF No. 78 at 1-2.  Therefore, the Court construes Lewis' "integrated enterprises" argument as applied to both the negligence and Rehabilitation Act claims.

The Court finds that it must first determine whether it may properly apply the test to Lewis' arguments concerning the nature of a special relationship, whether through ownership of the Residence or by breach of a statutory(here, the Rehabilitation Act) duty.  Lewis makes no argument that the integrated enterprises test has been applied to determine a duty and/or special relationship for a negligence claim, and the Court has found no case law applying such, or any similar, test. Rather, in Colorado, joint liability for negligence is governed by statute:

> (1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.
>
> * * * *
>
> (4) Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act. Any person held jointly liable under this subsection (4) shall have a right of contribution from his fellow defendants acting in concert. A defendant shall be held responsible under this subsection (4) only for the degree or percentage of fault assessed to those persons who are held jointly liable pursuant to this subsection (4).

Colo. Rev. Stat. § 13-21-111.5; *see also Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1054 (Colo. 1995) (the "tortious act" cited in subsection (4) includes negligence).  Lewis does not argue here that NFBC and RMCB "consciously conspire[d] and deliberately pursue[d] a common plan or design" to cause Lewis' injuries.  Moreover, the RMCB is not a party to this case and, under such circumstances, Colorado law requires that the "[n]egligence or fault of a nonparty may be considered if the claimant entered into a settlement agreement with the nonparty or if the defendant party gives notice that a nonparty was wholly or partially at fault." Colo. Rev. Stat. § 13-21-111.5(3)(b).  There is no indication that Lewis and RMCB entered into a settlement agreement here, and the record in this case indicates that the Defendants have filed no notice of designation of nonparty, including the

11

RMCB.  The Court concludes Lewis has failed under a joint liability theory to demonstrate she has a special relationship with NFBC.

Regarding any claim of joint liability with CCB, Lewis apparently relies on the Court's previous ruling finding Lewis' allegations—that her "assistive technology internship was an IEP [individualized education program]" for which CCB received federal funds, together with CCB's alleged requirement that its students take public transportation to and from the Residence—sufficed to state a plausible claim that Lewis and the CCB had a special relationship pursuant to the Rehabilitation Act for purposes of demonstrating CCB's duty of care.  Order, ECF No. 61. However, the Court's analysis in that ruling was performed under Fed. R. Civ. P. 12(b)(6), for which the allegations were taken as true.  Other than her allegations, Lewis provides nothing in her response to the present Rule 56 motion raising a genuine issue of material fact as to whether the CCB actually received federal funds or required its students to use public transportation. Accordingly, under the joint liability theory, because Lewis has failed to raise any issues of fact as to whether she and CCB have a special relationship for purposes of demonstrating a legal duty, the Court finds Lewis has failed to raise any issues of fact as to whether NFBC jointly engages in such relationship and, thus, shares a legal duty with CCB.

However, the Court finds that, for this claim, it need not engage in an analysis of whether NFBC, CCB, and/or RMBC are "integrated."  Lewis' allegations in support of her second claim characterize the NFBC as an owner of the Residence and state that, in such capacity, the NFBC owed her a legal duty of care.  *See* FAC ¶¶ 8, 16, 31, 49.  NFBC argues in the present motion it does not own the residence.  Mot. 5.  While Lewis did not respond directly to this argument in her response brief, the evidence she presented raises issues of material fact as to whether NFBC owns

the Residence.  *See* Fed. R. Civ. P. 56(c)(1); *see also Groh*, 352 P.3d at 478 ("Examples of [special]

relationships 'include . . . possessor of land/invited entrant.'") (quoting *Whitlock*, 744 P.2d at 58).

Lewis attached a copy of a report delivered by Mr. Labarre, President of the NFBC, to

attendees at the NFBC Annual Convention on October 26, 2012, in which he referred to the

Residence as "ours" and "we had the financial capacity and maturity to purchase this 2.5 million

dollar facility." Ex. 2.  In addition, RMCB's Articles of Incorporation provide that the assets of the

RMCB, presumably including the Residence, "upon dissolution will be distributed to the National

Federation of the Blind of Colorado." Ex. 4.  Contrarily, Michelle Chacon, former Treasurer for the

NFBC, testified that NFBC "never purchased" and "has never owned the Residence" and "NFBC

is not involved in any way with the Residence."  Chacon Aff. ¶¶ 4, 5.  Although Mr. Labarre

provided an affidavit in support of the present motion, he does not mention the RMCB or the

Residence.  *See* Affidavit of Scott Labarre, February 16, 2017 ("Labarre Aff."), ECF No. 83-1.

Based on this evidence, the Court finds genuine issues of material fact exist as to whether

NFBC is an owner of the Residence, from and to which Lewis was allegedly required by the CCB

program to take public transportation.  At the same time, the Court finds the parties have provided

insufficient information at this stage to determine whether disputed facts exist concerning whether

NFBC owes Lewis a legal duty as an alleged owner of the Residence.

B.     Public Policy Factors

"A court's conclusion that a duty does or does not exist is 'an expression of the sum total of

those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to

protection.'"  *Whitlock*, 744 P.2d at 57 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen,

Prosser and Keeton on the Law of Torts § 53, at 358 (5th ed. 1984)).

13

> Courts consider a number of factors to determine whether a duty exists, including: the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor. No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards – whether reasonable persons would recognize a duty and agree that it exists.

*Keller*, 111 P.3d at 447 (citations and quotation marks omitted); *see also Ryder v. Mitchell*, 54 P.3d 885, 891 (Colo. 2002) (en banc); *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002) (en banc) ("a duty of reasonable care may arise, despite the absence of a [special] relationship, when there is a foreseeable risk of injury to a plaintiff from a defendant's failure to take protective action to prevent injury").

Again, the Court concludes the parties do not provide sufficient information by which the Court may analyze the public policy factors and determine whether NFBC owes Lewis a legal duty of care. Thus, the Court will deny NFBC's motion for summary judgment on the negligence claim; in so doing, the Court makes no findings as to the actual merits of the claim.

## II.   Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).

To state a claim for disability discrimination under the Rehabilitation Act, a plaintiff must prove the same elements required to prevail under Title II of the ADA.  *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009) ("[b]ecause [Title II and

14

Section 504] involve the same substantive standards, we analyze them together"). Thus, to state a claim under Rehabilitation Act, a plaintiff must prove "that (1) plaintiff is a 'qualified individual with a disability,' (2) who was 'either excluded from participation in or denied the benefit of some [ ] entity's services, programs, or activities [receiving federal financial assistance] . . ., and (3) 'such exclusion, denial of benefits, or discrimination was by reason of a disability.'" *Id.* at 1246; *see also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

The FAC alleges that "[t]he Residence is ... located about two miles from the [CCB]," the "CCB has required its residents to take public transportation to get around the metropolitan area," and Lewis was subject to discrimination prohibited by the Rehabilitation Act "because she was denied access to the [CCB] and the safe use of the Frontage solely by reason of her visual disability." FAC, ¶¶ 31, 35, 86. The Court found these allegations were sufficient to state a claim under the Rehabilitation Act against the CCB. Order 18, ECF No. 61 ("The Supreme Court has recognized that § 504 is intended to ensure that 'an otherwise qualified handicapped individual [is] provided with meaningful access to the benefit that the grantee offers.... [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.'" (citing *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985))).

The NFBC argues "it is undisputed that NFBC does not operate or run the individualized education program plaintiff participated in with the CCB and which is at issue." Mot. 6. Lewis responded arguing that the NFBC and CCB are "integrated enterprises" and, as such, are jointly liable to Lewis for her claims of discrimination under the Rehabilitation Act.

Again, the Court finds an analysis of the integrated enterprises test unnecessary here; rather,

15

Lewis has submitted evidence, the admissibility of which is not challenged, reflecting Mr. Labarre's (NFBC President) statements in 2012 and 2014 repeatedly referring to the CCB as "ours," touting the CCB as the "single most important program that *we* operate," and praising CCB programs as "the application of ***our*** philosophy to real life." *See* Exs. 1, 2 (emphasis added). In response to this evidence and in support of summary judgment, Mr. Labarre submitted an affidavit listing several differences between the NFBC and CCB, including separate corporate entities, little "crossover" of board members, separate employment management, separate control of day-to-day operations and management, and separate financial control. Ex. C. Mr. Labarre also attests that, although "NFBC and CCB operate under the same philosophy of blindness and approaches to blindness[,] . . . NFBC did not create or establish the alleged CCB philosophy that 'CCB's beneficiaries must utilize public transportation to increase their employability.'" *Id.* ¶ 13. Finally, Mr. Labarre states, "NFBC did not develop the program or the curriculum for the CCB training program plaintiff participated in at the time of her injury." *Id.* ¶ 15. Neither Mr. Labarre nor NFBC submitted any other documents or information in support of Mr. Labarre's testimony.

The Court finds the evidence provided raises genuine issues of material fact as to whether the NFBC, in fact, operated or participated in operating the CCB's program, which is alleged to have required Lewis and other students to take public transportation to and from the Residence, which in turn allegedly required Lewis to navigate the Frontage and allegedly caused Lewis' injuries when the Frontage led her into oncoming traffic. Accordingly, the Court will deny the NFBC's motion for summary judgment in its favor on the Rehabilitation Act claim. With this ruling, the Court makes no findings, otherwise, on the merits of the claim as the information provided is insufficient.

**CONCLUSION**

In sum, the Court finds Lewis raised no issues of material fact as to whether the NFBC is a public entity and, thus, will enter summary judgment in the NFBC's favor on the ADA claim. However, Lewis raised material factual issues as to whether the NFBC is an owner of the Residence for purposes of her negligence claim, and an operator of the CCB program for purposes of her Rehabilitation Act claim.

THEREFORE, Defendant National Federation for the Blind, Colorado's ("NFBC") Motion for Summary Judgment [filed December 21, 2016; ECF No. 73] is **granted in part and denied in part**. Lewis' claim against the NFBC under Title II of the ADA is dismissed, but the negligence and Rehabilitation Act claims will proceed against the NFBC.

Dated at Denver, Colorado, this 15th day of March, 2017.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge