IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02692-MEH

LUPITA LEWIS,

     Plaintiff,

v.

JAMES T. POWERS,
NATIONAL FEDERATION OF THE BLIND, COLORADO,
COLORADO CENTER FOR THE BLIND,
CITY OF LITTLETON, COLORADO,
CZ FAMCO HOLDINGS LLC, and
ERMA'S MEXICAN FOOD, INC.,

     Defendants.

---

## ORDER ON MOTIONS IN LIMINE

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Defendant James Powers has filed two motions in limine: (1) Motion in Limine to Exclude SPECT Brain Scan and Expert Testimony of Dr. Gregory Hipskind [filed August 20, 2018; ECF No. 145]; and (2) Motion in Limine to Exclude the Accident and Visibility Simulations of Knott Laboratory [filed August 20, 2018; ECF No. 146].  I address each in turn.

**I.**     **Motion in Limine to Exclude SPECT Brain Scan and Expert Testimony**

     Defendant Powers first moves to exclude evidence of the SPECT brain scan conducted on Plaintiff Lupita Lewis, together with the expert testimony of S. Gregory Hipskind, M.D., PhD.  *See* ECF No. 145.  Plaintiff has filed a Response in Opposition (ECF No. 159), and Defendant Powers has filed a Reply Brief (ECF No. 167).  Because I find that the concerns raised by Defendant Powers go to credibility and not admissibility, the Motion in Limine is **denied**.

Plaintiff claims that she suffered a traumatic brain injury ("TBI") after being struck by a vehicle driven by Defendant Powers on December 12, 2013. She has endorsed Dr, Hipskind as an expert. During a visit with Dr. Hipskind on April 6 and 8, 2016, Plaintiff underwent a Single Photon Emission Computed Tomography ("SPECT") scan of her brain. Dr. Hipskind's "CereScan Brain SPECT and Assessment Report" dated April 8, 2018, is attached to the Motion in Limine at ECF No. 145-3, and the brain scan itself is attached at ECF No. 145-4. Plaintiff has listed both the CereScan Report and the SPECT Imaging on her exhibit list. *See* ECF No. 196-2 at 2.

Defendant Powers argues that Dr. Hipskind's testimony should be excluded at trial under Federal Rules of Evidence 402, 403, and 702 for three reasons: (1) the SPECT scan would not help the jury understand Plaintiff's uniquely complicated and overlapping pre- and post-accident medical and neuropsychiatric history; (2) any attempt to link the SPECT scan to a TBI caused by the accident at the center of this lawsuit would be "unscientific speculation"; and (3) "the danger of unfair prejudice, confusion of the issues, and/or misleading the jury substantially outweighs any remote probative value otherwise attributable to such evidence." Mot. in Limine 2. Defendant has engaged his own expert, Hal S. Wortzel, M.D., who evaluated Plaintiff under Federal Rule of Civil Procedure 35 and examined her pre- and post-accident medical records. Dr. Wortzel's report dated May 19, 2018, is attached to the Motion in Limine at ECF No. 145-1. His report contains an extensive criticism of cerebral SPECT imaging and critiques Dr. Hipskind's qualifications and findings. *See id.* at 26–38. Dr. Wortzel opines that evidence of the SPECT scan would be misleading to the jury. *See* Mot. in Limine 4–5 (listing Dr. Wortzel's concerns).

The Honorable R. Brooke Jackson considered another car-accident defendant's motion to exclude expert testimony of Dr. Hipskind in *Blotcher v. Stewart*, 45 F. Supp. 3d 1274 (D. Colo.

2014).  The defendant in that case advanced a similar argument as Defendant Powers—namely, that "the brain SPECT scan testimony . . . does not address whether the alleged abnormality in [the plaintiff's] brain was caused by the subject accident or by her subsequent accident or by something else entirely," *id.* at 1279.  Likewise, the defendant in *Blotcher* engaged Dr. Wortzel as his own expert.  Judge Jackson's order contains an in-depth analysis of the relevance and reliability of SPECT brain scans, *see id.* at 1278–83, which I incorporate by reference here in the interest of judicial efficiency.

Turning first to the relevance of SPECT brain scans, Judge Jackson explained that establishing causation "isn't the point of this evidence." *Id.* at 1279.  Rather, SPECT scan results are helpful both to clinicians (who consider them with other available information to determine a diagnosis of the injury and perhaps its cause) and to lay jurors (who are "dependent upon expert opinions in determining whether someone has sustained a traumatic brain injury"). *Id.* Judge Jackson then stated, "The undisputed fact that brain SPECT scan evidence does not address causation goes to its weight (and can be emphasized on cross-examination), not to its admissibility." *Id.* Judge Jackson next addressed the reliability of SPECT brain scans, applying the factors listed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594–95 (1993).  He expressly found that "Dr. Hipskind is qualified to interpret brain SPECT scan images," 45 F. Supp. 3d at 1279, and he affirmed "the scientific validity of SPECT as a technique," *id.* at 1280.  To supplement Judge Jackson's findings regarding Dr. Hipskind's experience, I note that Dr. Hipskind's curriculum vitae lists 128 separate engagements  for deposition and trial testimony from 2006 to the present.  *See* ECF No. 145-5 at 10–20.

In the end, Judge Jackson took issue only with Dr. Hipskind's statement that the abnormalities present in the plaintiff's brain scan were "*most* consistent with the literature pertaining to" TBI. The use of the word "most" troubled him because it gave too much credence to SPECT imaging as a diagnostic technique. *See* 45 F. Supp. 3d at 1281. Still, Judge Jackson validated Dr. Hipskind's ability to testify "about brain SPECT imaging in general, the testing that was performed on [the plaintiff], the resulting images, his opinion that the images reveal areas of . . . abnormalities, and, importantly, that the abnormalities are 'consistent with' (as opposed to 'most consistent with') a traumatic brain injury." *Id.* at 1282. Such testimony, he found, "would meet all requirements for admissibility under Rule 702." *Id.* In so ruling, Judge Jackson made clear that "other alleged shortcomings of Dr. Hipskind's opinions" could be explored on cross-examination and through the testimony of the defendants' own experts. *Id.* Those alleged shortcomings—"for example, that not all scientists and doctors view SPECT imaging as valuable even today, that Dr. Hipskind did not know or consider alternative explanations of the abnormalities, that the images were obtained some four and a half years after the subject accident, that even if she has sustained a mild traumatic brain injury it might have been caused by [a different accident], etc."—went "to the weight and not the admissibility of the evidence." *Id.*

Dr. Hipskind and his SPECT imaging studies have been the focus of repeated unsuccessful challenges before this district court and others. Judge Jackson chronicles those cases, *see id.* at 1280–81, noting that Dr. Hipskind's testimony was not excluded in any of them while recognizing that the district judge in one of the earlier cases characterized his testimony as "shaky but admissible." *See id.* (quoting *Searcy v. Hamburger*, No. 02-cv-2260-ZLW-MJW, 2005 WL 6047271, at *5 (D. Colo. June 3, 2005)). My research has uncovered yet another case with an

outcome similar to that in *Blotcher*. In *Lompe v. Sunridge Partners, LLC*, No. 12-cv-88-J, 2013 WL 11841489, at *1 (D. Wyo. Nov. 7, 2013), the district court denied a motion to exclude evidence and testimony relating to the results of a SPECT scan (which was performed by a different doctor), stating:

> Defendants may explore Dr. Hipskind's expert testimony and his reliance on and use of the SPECT scans on cross-examination. The issues raised in this motion go to weight of the evidence and credibility of the witness. If unanticipated questions arise concerning Dr. Hipskind's testimony, they may be revisited out of the presence of the jury at sidebar.

*Id.*; *see also Ellis v. Liberty Life Assurance Co.*, — F. Supp. 3d —, 2018 WL 4467197, at *2, 9, (D. Colo. 2018 (considering Dr. Hipskind's report on a plaintiff's SPECT brain scans in the ERISA context).

Defendant Powers has proffered no reason for me to depart from the well-reasoned precedent set forth above. Furthermore, Dr. Hipskind's report in the instant case contains significant limiting language. It acknowledges, for instance, that the scan was performed as part of a "blind review" and twice states that "[c]lose correlation with the patient's entire medical [or clinical] history is advised." ECF No. 145-3 at 5. It also explicitly recognizes that "the utilization of SPECT for the evaluation of psychiatric disorders is still considered an emerging science and therefore in the investigational stage," such that SPECT-based "findings are not considered stand alone or diagnostic per se and should always be considered in conjunction with the patient's clinical condition." *Id.* (italics omitted). It further cautions: "These data should only be used as additional information to add to the clinician's diagnostic impression." *Id.* (italics omitted). In my opinion, this limiting language assuages Defendant Powers's concern that the SPECT brain scan will confuse or mislead the jury—particularly because his own expert, Dr. Wortzel, will be able to espouse his

contrary position that a SPECT brain scan is of limited value in assessing an accident victim with a pre- and post-accident medical and neuropsychiatric history that is as complicated as Plaintiff's. Accordingly, the first motion in limine is denied.

## II.    Motion in Limine to Exclude Accident and Visibility Simulations

Defendant Powers also moves to exclude the accident and visibility simulations of Knott Laboratory. *See* ECF No. 146. Plaintiff has filed a Response in Opposition (ECF No. 160), and Defendant Powers has filed a Reply Brief (ECF No. 168). The parties have provided the Court with copies of the simulations and have identified the following files as being at issue: 16487_DriverView.mp4;    16487_DriverViewPointCloud.mp4;    16487_ObliqueView.mp4; 16487_ObliqueViewContact.mp4; MVI 1266CC; and MVI 1267CC.

Defendant Powers objects to the simulations on several grounds, principally that (1) the type of street lamp bulb in use at the time of the accident is different than that used in the simulations (the current bulb is brighter according to defense counsel); (2) the location of Plaintiff in the roadway is inaccurate in the simulations; (3) the location of an obstacle that caused Defendant Powers to swerve to the left prior to the accident is inaccurate in the simulations; and (4) various other aspects of the simulations are misleading, sufficient to cause them to be inadmissible.

Even inaccurate depictions of an accident may be admissible at trial for various purposes, including "if they are meant to illustrate general physical principles rather than re-create the accident." *Montag by Montag v. Honda Motor Co., Ltd.*, 75 F.3d 1313, 1420 (10th Cir. 1996). In addition, even inaccurate re-creations may be admissible so long as they are subject to the opposing party's vigorous cross-examination, and the Court properly instructs the jury on the precise evidentiary purpose(s) for which the re-creations are admitted. *Id.* In *Robinson v. Missouri Pacific*

*Railroad Co.*, 16 F.3d 1083, 1086–89 (10th Cir. 1994), the Tenth Circuit affirmed the district court's decision to allow the jury to watch an animated video of a train accident even though the defendant objected that certain aspects of the video were inaccurate or misleading. In that case the purpose of the exhibit was demonstrative, to illustrate an expert's testimony, which the Tenth Circuit found proper despite the alleged problems. *See id.* at 1087–88 ("Given the limited, solely illustrative purpose for introducing the exhibit, the cautionary instruction to the jury, and the opportunity for vigorous cross-examination, we do not believe the district court abused its discretion in admitting the [collision video]."). On the other hand, if offered as an actual "re-creation" of an accident, the creation of a video must be conducted "under conditions similar to that accident." *Id.* at 1087 (citing *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 401 (10th Cir. 1993)).

The videos proffered by Plaintiff have some permissible use at trial. I do not believe the issue is currently properly briefed to permit me to specify exactly what use(s) may be permissible; indeed, Plaintiff states only that the animation and simulations "will be substantially relevant and helpful to a jury in visualizing the collision and understanding the evidence." Resp. 13. I am fully cognizant of my obligation in this regard. "Because of its dramatic power, trial judges should carefully and meticulously examine proposed animation evidence for proper foundation, relevancy and the potential for undue prejudice." *Robinson*, 16 F.3d at 1088. In the event the parties desire a Rule 702 hearing at which I may be able to more fully define any proper use(s), they may file such a motion. For the present, because the pending Motion in Limine seeks to exclude the accident and visibility simulations altogether, that Motion will be denied. Through appropriate cross-examination and limiting or other instructions from the Court, the proffered evidence has some permissible evidentiary use.

### III. Conclusion

The motion in limine relating to the SPECT brain scan and Dr. Hipskind's expert testimony [filed August 20, 2018; ECF No. 145] is **denied**, with the caveat that Dr. Hipskind's trial testimony should align with the content of his report and should not stray into causation principles. The motion in limine relating to the accident and visibility simulations of Knott Laboratory [filed August 20, 2018; ECF No. 146] is also **denied**.

SO ORDERED.

Dated at Denver, Colorado, this 16th day of November, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty