IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-CV-02692-MEH

LUPITA LEWIS,

     Plaintiff,

v.

JAMES T. POWERS;
CITY OF LITTLETON, COLORADO;
NATIONAL FEDERATION OF THE BLIND, COLORADO;
COLORADO CENTER FOR THE BLIND;
CZ FAMCO HOLDINGS LLC; and
ERMA'S MEXICAN FOOD, INC.,

     Defendants.

---

## ORDER ON DEFENDANT CITY OF LITTLETON'S COMBINED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff Lupita Lewis, a visually impaired woman, was injured in December 2013 in an automobile/pedestrian accident. Plaintiff alleges that she was returning from the Colorado Center for the Blind ("CCB") in Littleton, Colorado, to her residence when she became disoriented on the poorly designed and maintained sidewalk area in front of Chubby's restaurant. She wandered into the street and was struck by a vehicle driven by Defendant James Powers. In addition to Mr. Powers and the CCB, Plaintiff is suing the City of Littleton (the "City"); the National Federation of the Blind, Colorado ("NFBC"); CZ Famco Holdings LLC ("CZ Famco"); and Erma's Mexican Food, Inc. ("Erma's").

     All Defendants except for Mr. Powers and Erma's have filed motions to dismiss and/or for summary judgment. Before the Court here is Defendant City of Littleton's Combined Motion to

Dismiss and Motion for Summary Judgment [filed June 28, 2018; ECF No. 137].  For the reasons set forth below, I **grant** the City's motion and dismiss all claims filed against the City with prejudice.

## BACKGROUND

### I.     Factual Background

The evidence submitted reveals the following facts viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter.[1]  For the facts articulated by Plaintiff, I consider only the well-supported facts contained in her response and supplemental response briefs (ECF Nos. 144, 157)—not the unsupported facts contained in her response, for which she provided no record citations (*see* ECF No. 144 at 1–5).  As the responding party, it is Plaintiff's burden "to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record."  *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quoting *Downes v. Beach*, 587 F.2d 469. 472 (10th Cir. 1978)).  The Court has no obligation "to comb the record" to make Plaintiff's arguments for her.  *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

**The Accident**

1.     CCB is a non-profit organization offering a variety of educational and training programs for the blind.  Mot., Def.'s Statement of Facts ¶ 1, ECF No. 137 (admitted in Pl.'s Resp. to Def.'s Statement of Facts 1, ECF No. 157).

---

[1] To provide useful context, some of these facts relate to the other Defendants, not just the City. But I am mindful of the parties' respective burdens under Federal Rule of Civil Procedure 56, and my Order considers the evidence presented within the parameters of that Rule.

2.      CCB owns the McGeorge Mountain Terrace Apartments at 5871 South Lowell Boulevard, Littleton, Colorado (the "Apartments").  *Id.* ¶ 2 (also admitted).

3.      Students reside at the Apartments while attending CCB classes.  *Id.* ¶ 3 (also admitted).

4.      Ms. Lewis is legally blind.  *Id.* ¶ 4 (also admitted).

5.      Ms. Lewis attended classes at CCB on several occasions, including the time frame from September through December 2013.  *Id.* ¶ 5 (also admitted).

6.      Ms. Lewis resided at the Apartments in December 2013.  *Id.* ¶ 6 (also admitted).

7.      On December 12, 2013, Ms. Lewis took a Regional Transportation District ("RTD") bus from CCB to return to the Apartments.  *Id.* ¶ 7 (also admitted).

8.       The RTD bus dropped her off near the intersection of West Bowles Avenue and South Lowell Boulevard.  *Id.* ¶ 8 (also admitted).

9.      Ms. Lewis rode the bus with Shawn Spears, a CCB instructor.[2]  *Id.* ¶ 9 (also admitted).

10.     After she got off the bus, Ms. Lewis began walking west on West Bowles Avenue to the corner of South Lowell Boulevard.  *Id.* ¶ 10 (also admitted).

11.     Mr. Spears asked Ms. Lewis if she was "okay getting back to [her] apartment."  Ms. Lewis responded, "Yeah.  I said, No, I've got it.  I know where I'm going.  I'm—I'm fine."  *Id.* ¶ 11 (also admitted).

---

[2] The Court notes that Mr. Spears' first name is alternatively spelled as "Shon" and "Shawn" on the parties' witness lists.  *See* Final Pretrial Order 15, 18, ECF No. 196.

12.     Ms. Lewis turned right (north) onto the east side of South Lowell Boulevard to continue toward the Apartments.  *Id.* ¶ 12 (also admitted).

13.     Plaintiff "was familiar with the path of travel along the east side of Lowell."  Final Pretrial Order 13 (Stipulation j), ECF No. 196.

14.     Chubby's restaurant is located at 5826 South Lowell Boulevard on the east side of the street.   Def.'s Statement of Facts ¶ 13 (also admitted).

15.     The area in front of Chubby's is a driveway/parking lot fronting South Lowell Boulevard.  *Id.* ¶ 14 (also admitted).

16.     Ms. Lewis had difficulty distinguishing between the driveway/parking lot of Chubby's and South Lowell Boulevard.  *Id.* ¶ 15 (also admitted).

17.     Ms. Lewis wandered into South Lowell Boulevard.  *Id.* ¶ 16 (also admitted).

18.     Mr. Powers was driving in the northbound lane of South Lowell Boulevard, and he hit Ms. Lewis with his vehicle.  *Id.* ¶ 17 (also admitted).

## South Lowell Boulevard and the Surrounding Area

19.     The driveway/parking lot in front of Chubby's and bordering South Lowell Boulevard has been in substantially the same condition since before 1992.  *Id.* ¶ 18 (also admitted).

20.     Other than the present lawsuit, the City is not aware of any reports of dangerous sidewalk conditions in the area in front of Chubby's.  *Id.* ¶ 19 (revised to address Plaintiff's denial based on semantics, *see* Pl.'s Resp. to Def.'s Statement of Facts 2).[3]

---

[3]  Plaintiff denies numerous facts listed by the City purely based on semantics, citing her own accident as contrary evidence.  The City stated here, for instance, that it "is not aware of any reports of dangerous sidewalk conditions in the area in front of Chubby's."  Def.'s Statement of Facts ¶ 19.  Ms. Lewis responded, "Plaintiff denies that the City is not aware of any reports of dangerous

21. Other than the incident involving Ms. Lewis, the City is not aware of any accidents, incidents, or injuries in the area in front of Chubby's due to any condition of the sidewalk. *Id.* ¶ 20 (also admitted).

22. Chubby's owns the frontage area and parking lot. *Id.* ¶ 21.[4]

23. Chubby's has not contacted the City to request a repair of drainage problems in the frontage area. *Id.* ¶ 22.[5]

24. Chubby's maintains its parking lot by resealing it approximately bi-annually, filling in pot holes, and restriping the parking spaces. But it has not performed repairs, renovations, resurfacing, or reconstruction of its parking lot or the curbs, sidewalks, or gutters along the South Lowell Boulevard frontage road. ECF No. 137-8 at 3 (CZ Famco's Resp. to Pl.'s Interrog. No. 11).

---

sidewalk conditions in front of Chubby's, as at a minimum, Plaintiff filed the instant matter, a Complaint in United States District Court, alleging same in 2015." Pl.'s Resp. to Def.'s Statement of Facts 2, ¶ 19. The Court will not embrace Plaintiff's attempt to manufacture a genuine issue of material fact as to the respective Defendants' awareness in this way, here or with respect to the undisputed facts listed in Paragraphs 24 through 26.

[4] Plaintiff does not present any contrary evidence to refute this fact. She cites only to CZ Famco's Response to Plaintiff's Interrogatory No. 10. *See* Pl.'s Resp. to Def.'s Statement of Facts 2, ¶ 21 (citing ECF No. 137-8). But that response is not on point. Interrogatory No. 10 asks CZ Famco to "[d]escribe in material detail [its] efforts to have Littleton repair the drainage problems caused by piles of snow covering the sewer grates in or near [the] frontage on the east side of S. Lowell Blvd." ECF No. 137-8 at 2. In responding to that Interrogatory, CZ Famco stated only that "the gutter and drain are not on CZFamco property." *Id.* at 3. Regardless, I do not consider this distinction to be material to the City's arguments in this motion.

[5] Plaintiff does not present any contrary evidence to refute this fact, which is a fair inference from CZ Famco's Response to Plaintiff's Interrogatory No. 10. Plaintiff asked CZ Famco to describe its efforts to have Littleton repair drainage problems caused by snow, and CZ Famco responded that it tries to chip at the gutter and grate itself to allow melting water to flow and drain. *See* ECF No. 137-8 at 2–3. The obvious implication is that CZ Famco did not contact the City to request a repair of drainage problems in the frontage area.

25.     Other than the incident involving Ms. Lewis, CCB was not aware of any motor vehicle/pedestrian incidents within a one-mile radius of the Apartments from the time it acquired the Apartments in 2012 to the present.  Def.'s Statement of Facts ¶ 25 (revised to address Plaintiff's denial based on semantics, *see supra* n.3).

26.     Other than the incident involving Ms. Lewis, CCB is not aware of any student, staff member, or other representative unintentionally walking into South Lowell Boulevard.  *Id.* ¶ 26 (revised to address Plaintiff's denial based on semantics, *see supra* n.3).

27.     Other than the incident involving Ms. Lewis, NFBC is not aware of any motor vehicle/pedestrian incidents within a one-mile radius of the Apartments.  *Id.* ¶ 28 (revised to address Plaintiff's denial based on semantics, *see supra* n.3).

28.     Other than the incident involving Ms. Lewis, NFBC is not aware of anyone associated with it walking into the roadway within a one-mile radius of the Apartments and has no knowledge of any communications related to such incidents.  *Id.* ¶ 29.[6]

29.     NFBC is not aware of any communications giving notice that the area in front of Chubby's is disorienting, an obstacle, challenging, and/or an impediment to others' safe path of travel.  *Id.* ¶ 30.[7]

---

[6] Plaintiff offers no contrary evidence in its conclusory denial of this fact.  *See* Pl.'s Resp. to Def.'s Statement of Facts 4, ¶ 29.

[7] Plaintiff does not present any contrary evidence to refute this fact.  She cites NFBC's Response to Plaintiff's Interrogatory No. 2.  *See* Pl.'s Resp. to Def.'s Statement of Facts 4, ¶ 30.  That response outlines NFBC's relationship with other entitles, including CCB, but does not speak to notice in any way.  *See* ECF No. 157-13 at 5–6.

30.     Ms. Lewis did not prepare any kind of written complaint to anyone at CCB regarding any difficulty or disorientation by the Chubby's driveway.  *Id.* ¶ 32 (also admitted).

31.     Ms. Lewis does not remember the name of any CCB staff member she told about any difficulty navigating the area in front of Chubby's.  *Id.* ¶ 33 (also admitted).

32.     Ms. Lewis never complained or otherwise communicated with anyone at the City about the area in front of Chubby's.  *Id.* ¶ 34 (also admitted).

33.     Ms. Lewis did not tell anyone from Chubby's about any problems navigating the area in front of the Chubby's driveway.  *Id.* ¶ 35 (also admitted).

34.     Ms. Lewis does not know if any other students at CCB told anyone at Chubby's about any problems navigating the driveway.  *Id.* ¶ 36 (also admitted).

35.     Ms. Lewis has not had any contact with anyone at Chubby's.  *Id.* ¶ 38 (also admitted).

36.     The City has performed construction on or near South Lowell Boulevard.  That work included only: (a) milling and repaving South Lowell Boulevard in front of Chubby's in 2000; (b) putting a seal coat on South Lowell Boulevard in front of Chubby's in 2009; (c) reconstructing the west part of West Bowles Avenue at the intersection with South Lowell Boulevard in 2011; (d) repaving the intersection of West Bowles Avenue and South Lowell Boulevard, and also West Bowles Avenue to the east of that intersection, in 2013; and (e) replacing the sidewalk on South Lowell Boulevard north of South Lowell Way in 2015.  *Id.* ¶ 39 (also admitted).

37.     The City has not received federal funding for any program regarding access for disabled persons or for any construction or improvement to South Lowell Boulevard from Bowles to Lowell Way. *Id.* ¶ 42.[8]

## II.     Procedural History

Plaintiff initiated this action on December 12, 2015, ECF No. 1, and then filed a First Amended Complaint as a matter of course, ECF No. 11. The City filed this Combined Motion to Dismiss and Motion for Summary Judgment on June 28, 2018. ECF No. 137. Plaintiff filed her response on August 19, 2018. ECF No. 144. On September 4, the City submitted its reply, ECF No. 152, which correctly noted that Plaintiff's response failed to comply with my Practice Standards, which require a separate section in the response admitting or denying each of the moving party's undisputed facts. *See id.* at 2–3. Accordingly, I ordered Plaintiff to file a separate document to that effect, and I permitted the City to file an amended reply if necessary, to be fair. *See* ECF No. 155. Plaintiff filed her Response to the City of Littleton's Statement of Material Facts (with 180 pages of new exhibits) on September 12. ECF No. 157. The City filed a Supplemental Reply on September 19. ECF No. 158.

---

[8] Plaintiff does not present any contrary evidence to refute this fact. The operative Complaint states that "Littleton is a public entity that receives federal financial assistance to its Public Works Department." Second Am. Compl. ¶ 85, ECF No. 176. However, Plaintiff does not try to tie any federal funding to the City's Public Works Department in her response. Rather, she contends that a document produced by the City (COL01329) shows that the City received a federal grant of $127,500 from the U.S. Department of Housing and Urban Development to bring the City's sidewalks into compliance with ADA standards. Plaintiff cites Exhibit S (ECF No. 157-19), though this document is actually within Exhibit R (ECF No. 157-18 at 66) ("Community Development Block Grant (CDBG) Disabled Access"). This document does not contain any information whatsoever about location, and Plaintiff has not provided any admissible evidence that links this grant to the location in question.

On October 12, Plaintiff filed the operative Second Amended Complaint, which adds claims against an additional defendant, Erma's. ECF No. 176. In the interest of judicial efficiency, the Court did not require the City to refile this motion (and thus Plaintiff to refile her response) even though Plaintiff filed a Second Amended Complaint, as the allegations and claims filed against the City remain the same.

The Court conducted a Final Pretrial Conference on November 13 and entered the Final Pretrial Order on November 15, ECF No. 196. Trial is set to begin on February 11, 2019.

## LEGAL STANDARD

When a motion under Federal Rule of Civil Procedure 12(b)(6) presents matters outside the pleadings, it must be treated as one for summary judgment under Rule 56. A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

## I.     First Claim:  Negligence

In her Second Claim for Relief, Plaintiff asserts that the City was negligent. Second Am. Compl. ¶¶ 65–71. The allegations relevant to this Defendant[9] are as follows:

---

[9] Within her Second Claim, Plaintiff also asserts a negligence claim against NFBC, CCB, CZ Famco, and Chubby's; however, I address those claims in separate orders.

- The City "knew or should have known that visually disabled persons living at the Residence would use the public sidewalk on the east side of Lowell as a path of travel to gain access to the Residence." *Id.* ¶ 66.

- The City "took no steps to render the curb and sidewalk on the east side of Lowell accessible to disabled person, including without limitation visually disabled persons such as Ms. Lewis living at the Residence." *Id.* ¶ 68.

- The City "acted with deliberate indifference to the rights of visually impaired persons living in the Residence, such as Ms. Lewis[,] including without limitation rights created by the ADA and [Rehabilitation Act]." *Id.* ¶ 69.

- "Ms. Lewis suffered harms and losses because she lost her way while navigating by cane through the Frontage." *Id.* ¶ 70.

- The City's "deliberate indifference . . . in failing to accommodate the needs of disabled persons, including without limitation Ms. Lewis and other visually disabled persons living at the Residence and/or traversing the Frontage on foot[,] proximately caused Ms. Lewis to suffer [enumerated] harms and losses." *Id.* ¶ 71.

In her response brief, Plaintiff argues that the condition of the sidewalk caused her to "los[e] her way and wander[] into the road." Resp. 3. In the Final Pretrial Order, Plaintiff adds that she would not even have been crossing the street "and vulnerable to traffic" had Erma's, CZ Famco, and the City "complied with existing standards for an accessible and safe pedestrian path of travel on the East side of S. Lowell Blvd." Final Pretrial Order 2. The City argues that Plaintiff's negligence claim is barred by the Colorado Governmental Immunity Act ("CGIA") as a matter of law, because it is a municipality in the State of Colorado, and there has been no waiver of sovereign immunity. Mot. 8–11. I agree with the City.

"[T]he CGIA generally immunizes the government from tort liability," but "it also waives this immunity under certain limited circumstances." *Medina v. State of Colo.*, 35 P.3d 443, 453 (Colo. 2001); *see* Colo. Rev. Stat. § 24-10-105(1) ("No public entity shall be liable for such [tort] actions except as provided [by the CGIA]."). The CGIA covers a "[p]ublic entity," which includes

"any county, city and county, [and] municipality." Colo. Rev. Stat. § 24-10-103(5). The CGIA's grant of immunity is "strictly construed." *Medina*, 35 P.3d at 453.

Plaintiff has not defeated the City's assertion that it is immune from liability. In her response brief, she cites only one case in defense of her negligence claim—*City of Aspen v. Meserole*, 803 P.2d 950 (Colo. 1990)—with no further analysis on this critical issue. *See* Resp. 6–8. The plaintiff in *Meserole* was injured when she tripped over a piece of metal (a remnant from an old traffic sign) that protruded about two inches from the sidewalk. 803 P.2d at 950. Considering the 1986 amendments to the CGIA, the Colorado Supreme Court reaffirmed government liability for dangerous conditions that exist on sidewalks and refused to carve out an exception for alleys or apply the traffic-sign exception to the piece of metal involved. *Id.* at 955-57. In so holding, the court declared that the city had a duty of reasonable care for maintenance of sidewalks, and that "public entities are liable for dangerous conditions on sidewalks, whether it is people or vehicles that are traveling upon them." *Id.* at 955. *Meserole* is certainly relevant; indeed, the City acknowledges that under *Meserole* immunity is waived for a dangerous condition of a sidewalk. *See* Reply at 5. But that case is by no means dispositive, particularly given that the sidewalk here was allegedly "rough, irregular, and cracked," *see* Resp. 6, whereas there was a two-inch piece of metal protruding in *Meserole*.

The critical inquiry is whether there was a "dangerous condition" on the sidewalk. Relevant here, the CGIA waives sovereign immunity for "an action for injuries resulting from . . . [a] dangerous condition . . . of any public highway, road, street, or sidewalk within the corporate limits of any municipality." Colo. Rev. Stat. § 24-10-106(1)(d)(I). "Sidewalk" is defined as "that portion of a public roadway between the curb lines or the lateral lines of the traveled portion and

the adjacent property lines which is constructed, designed, maintained, and intended for the use of pedestrians." *Id.* § 24-10-103(6). The City does not contest that the area in question constitutes a "sidewalk" under this definition, even though Plaintiff herself intermittently calls it "more than 160 feet of open and unrestricted driveway" and "the driveway and parking lot owned by Defendant CZ Famco," *see, e.g.*, Resp. at 2, 6.

My immunity analysis necessarily centers on section 24-10-103(1.3) of the CGIA, which defines "[d]angerous condition":

> "Dangerous condition" means either a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, ***which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility***. For the purposes of this subsection (1.3), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. ***A dangerous condition shall not exist solely because the design of any facility is inadequate.*** The mere existence of wind, water, snow, ice, or temperature shall not, by itself, constitute a dangerous condition.

Colo. Rev. Stat. § 24-10-103(1.3) (emphasis added).

Plaintiff's expert, Amy Nangle, M.A., states that the sidewalk was unsafe because "[t]here were no detectable warnings at the sidewalk ramp, and the concrete was rough, irregular, and cracked"; in addition, the curb height was "low." Resp. 6 (quoting ECF 144-2 at 14). Otherwise, Plaintiff simply assumes that a dangerous condition exists, pointing out a perceived lack of evidence rather than presenting affirmative evidence. *See, e.g.*, *id.* at 7 ("Quite obviously, there will be no evidence or testimony, expert or otherwise, that the path of travel on the East side of Lowell complies with existing standards, regulations, or laws. There will be no evidence or

13

testimony that the driveway and parking lot owned by Defendant CZ Famco complies with existing standards, regulations, or laws and doesn't present a dangerous path of travel for any pedestrian. It doesn't take an expert to see all the tripping hazards, the malee [sic] of cars coming from all directions, zipping in and out of this driveway/parking lot over a distance of more than 160 feet, cars parked on the sidewalk pushing pedestrians into the street to walk around, etc.").

The City more substantively (and more appropriately) focuses on the definition of "[d]angerous condition," quoted above. *See* Mot. 8–11, Reply 7–9. Under that definition, a dangerous condition existed on the sidewalk in question only if (1) "an unreasonable risk" to public health or safety was "known to exist or . . . in the exercise of reasonable care should have been known to exist"; *and* (2) the condition was "proximately caused by the negligent act or omission of the public entity . . . in constructing or maintaining such facility." Colo. Rev. Stat. § 24-10-103(1.3).

I turn first to the notice requirement. Plaintiff has not raised any genuine disputes as to issues of material fact regarding the City's actual knowledge of dangerous conditions or accidents, incidents, or injuries in this area. As established above, except for this lawsuit, the City is not aware of any reports of dangerous sidewalk conditions in the area in front of Chubby's. *See* Statement of Facts ¶ 20 (admitted). Likewise, other than the accident under consideration here, the City is not aware of any accidents, incidents, or injuries in the area in front of Chubby's due to any condition of the sidewalk. *Id.* ¶ 21 (also admitted). Additionally, Ms. Lewis never complained or otherwise communicated with anyone at the City about the area in front of Chubby's. *Id.* ¶ 32 (also admitted). Similarly, no one at Chubby's contacted the City to request a repair to fix drainage problems in the frontage area. *Id.* ¶ 23. Last, none of the other Defendants was aware of any

potential danger either, with the possible exception of unnamed Chubby's employees.  *See id.*
¶¶ 25–31, 33–34.

Likewise, Plaintiff has not raised any disputed genuine issues of material fact as to whether
the City *should* have known the sidewalk was dangerous.  Granted, the City performed
construction on or near South Lowell Boulevard.  *See supra* Statement of Facts ¶ 36.  Even so,
there is no evidence that such construction should have put the City on notice of problems with
this sidewalk area.  Plaintiff contends that the sidewalk "runs along a public street in open view."
Resp. 8.  But "in open view" to whom?  When should the City's employees have noticed it?  The
answer seems to lie in Plaintiff's assertion that the City's inspectors performed numerous
inspections in the area.  *Id.*  Yet Plaintiff has not presented any *admissible* evidence to establish
this fact.  *See* Fed. R. Civ. P. 56(c) (making clear that the material cited to support or dispute a fact
must be presented in a form that is admissible in evidence).  Plaintiff references online permit
history and inspections performed by the City for the Chubby's area (*see* ECF No. 144-4) and a
nearby facility for the Denver Water Department (*see* ECF No. 144-5).  However, these lists are
vague and incomplete (with permit types listed as "Miscellaneous," "Grading," "New Other,"
"Right of Way," and "Street Cut" and references to unattached notes); they do not provide any
detail regarding the specific work performed, let alone establish that work was done on or near the
sidewalk.  Besides, they were neither produced nor authenticated within this litigation.  For similar
reasons, as discussed at the Final Pretrial Conference on November 13, 2018, the Court will not
consider the "expert report" of Scott M. Shea (*see* ECF No. 144-1) in support of Plaintiff's
dangerous-condition argument, *see* Resp. 6, 8, or, later, her statutory claims.

Plaintiff's negligence claim is doomed regardless. Even if Plaintiff had satisfied the know-or-should-have-known requirement for a "dangerous condition," she cannot satisfy the second requirement—namely, that the City negligently maintained the sidewalk in front of Chubby's. *See* Colo. Rev. Stat. § 24-10-103(1.3) ("and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility"). The CGIA defines "[m]aintenance" to mean "the act or omission of a public entity . . . in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure." *Id.* § 24-10-103(2.5). Maintenance does not encompass "any duty to upgrade, modernize, modify, or improve the design or construction of a facility." *Id.*

It is clear from the Second Amended Complaint and Plaintiff's responses to this motion that she believes the sidewalk's design is flawed, and the City should have taken steps to modernize it and bring it into compliance with contemporary standards. *See, e.g.*, Second Am. Compl. ¶ 41 ("There are no truncated domes from Bowles along Lowell until the Intersection."); ¶ 42 ("Most visually disabled individuals who navigate by cane cannot routinely discern drop-offs of less than three inches."); ¶ 43 ("The slopes of the Driveway Cut and gutters are difficult to detect or undetectable to visually disabled persons such as Ms. Lewis."); ¶ 68 ("Littleton took no steps to render the curb and sidewalk on the east side of Lowell accessible to disabled persons . . . ."); *see also* Resp. 3 ("There are no detectible warnings on these transition sidewalk ramps to warn blind pedestrians the sidewalk is ending or beginning."); *id.* at 4 (stating that the City has not been "willing to bring the public path of travel in front of the Chubby's driveway up to modern standards of accessibility and safety"); *id.* at 8 (arguing that the City had "the authority to require the owner

[of] the land to bring the sidewalk and public path of travel up to safer condition and modern standards"). This theory also underlies Plaintiff's ADA and Rehabilitation Act claims.

Notably, "[a] dangerous condition shall not exist solely because the design of any facility is inadequate." Colo. Rev. Stat. § 24-10-103(1.3). In furtherance of this principle, Colorado courts have emphasized that the failure to improve or modify an existing system is not actionable under the CGIA. *See, e.g.*, *City of Colo. Springs v. Powell*, 48 P.3d 561, 566 (Colo. 2002) ("An injured plaintiff cannot sue under the 'dangerous condition' provision of the CGIA merely by alleging design flaws."); *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1385 (Colo. 1997) ("[T]he duty to maintain means only a duty to keep a street or facility in its original or improved condition [rather than a] duty to upgrade, modernize or improve a street or facility." (quoting Second Reading of H.B. 1291 Before the House of Representatives, 58th G.A., 2d Reg. Sess. 1992) (statement of Rep. Faye Fleming))); *see also Karr v. City & Cty. of Denver*, 677 P.2d 1384 (Colo. App. 1984) (stating that "the failure to modify or improve" portions of streets or highways "to make them safer in light of changing use" is not actionable under the immunity statute); *Lyons v. City of Aurora*, 987 P.2d 900, 902 (Colo. App. 1999) (explaining that the CGIA "preclude[s] liability when a governmental entity fails to modify a facility because of changing safety standards or use").

Plaintiff's final argument in support of her negligence claim—that "[t]he City of Littleton had the authority to require the owner of [the] land to bring the sidewalk and public path of travel up to safer condition and modern standards" under the Littleton City Code and section 31-15-702 of the Colorado Revised Statutes—is equally unavailing. Plaintiff quotes permissive, not mandatory, language. For instance, "Whenever the City Council shall find that an existing

sidewalk is a hazard to the public health and safety, it *may* order the repair or replacement of said sidewalk by the owner of adjacent and abutting property." Resp. 8 (quoting Littleton City Code § 8-2-1 (emphasis added)); *see also* Colo. Rev. Stat. § 31-15-702 (stating that a municipality's governing body "has the power" to provide for the construction and maintenance of sidewalks and to pay the expenses thereof by special assessments upon the adjacent or abutting property). Because this language is purely permissive, the code and statute cited do not alter my immunity analysis. Of course, in light of this lawsuit, the City should consider revisiting this area to assess whether to exercise its permissive authority for the public's best interest.

"The burden of proof is on the plaintiff to prove the government has waived its immunity, but this burden is relatively lenient, as the plaintiff is afforded the reasonable inferences from her undisputed evidence." *City & Cty. of Denver v. Dennis*, 418 F.3d 489, 494 (Colo. 2018). Plaintiff has not satisfied even this lenient burden.

## II.     Second Claim:  Violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-38

In her next claim, Plaintiff asserts that the City violated Title II of the ADA because the sidewalk was a barrier that precluded her from safely using the City's sidewalks, curbs, and curb cuts to access the Apartments. Second Am. Compl. ¶¶ 72–81 (Third Claim for Relief). Title II is the portion of the ADA that applies to state and local governments. It provides, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also id.* § 12131(1) (defining "public entity" to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State . . . or local government"). To state a claim under Title

18

II, Plaintiff must allege that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

The parties seem to agree that Plaintiff is "a qualified individual with a disability." Moreover, the City proceeds under the assumption that a municipality's sidewalks constitute a program or service subject to Title II of the ADA. If the area in question is indeed a sidewalk,[10] this assumption seems reasonable. Although neither the Tenth Circuit nor this district court has considered the issue, "the weight of authority favors a finding that sidewalks do constitute services under Title II of the ADA and section 504 of the [Rehabilitation Act ("RA")]." *Hamer v. City of Trinidad*, No. 16-cv-02545-NYW, 2017 WL 5969815, at *7 n.5 (D. Colo. Dec. 1, 2017) (declining to consider the issue "in light of the lack of clearly dispositive Circuit precedent" but citing decisions issued by other courts). The viability of Plaintiff's ADA claim therefore turns on whether the ADA (and its implementing regulations) required the City to bring this area into compliance with its terms, given that the area existed before the ADA's effective date of January 26, 1992.

The City argues that the ADA did not impose a duty to bring existing facilities into compliance with its terms. It provides persuasive authority for its position that it was not required

---

[10] Although I treat the area as a "sidewalk" for purposes of my analysis, I harbor some doubts about the propriety of this classification for the ADA and Rehabilitation Act claims. Plaintiff herself consistently refers to the area as "the driveway and parking lot of the Chubby's restaurant" and "more than 160 feet of open and unrestricted driveway." *See* Resp. 2. In addition, I do not see why the classification as a "sidewalk" for purposes of the CGIA necessarily translates to classification as a "sidewalk" for purposes of the ADA and Rehabilitation Act.

to immediately comply with the ADA upon its enactment in 1992. Although my research did not reveal any cases in which the Tenth Circuit directly addressed this topic, the Ninth Circuit discussed a public entity's responsibility in a similar factual scenario in *Cohen v. City of Culver City*, 754 F.3d 690, 696–97 (9th Cir. 2014). There, a pedestrian who required a cane for mobility brought an ADA action against the city and others after he tripped and fell trying to step up onto a city sidewalk.

The Ninth Circuit considered several of the regulations that the United States Attorney General promulgated to implement Title II and to flesh out public entities' statutory obligations with more specificity. *Id.* at 695. Specifically, 28 C.F.R. § 35.150(a)(1) ("Existing facilities") makes clear that a public entity was not required to immediately alter all existing facilities to comply with the ADA when it went into effect. By contrast, 28 C.F.R. § 35.151 ("New construction and alterations") governs facilities that a city begins to build or alter *after 1992* and requires every newly built or altered portion of such a facility to be "readily accessible to and usable by individuals with disabilities" unless doing so would be "structurally impracticable." Any construction or modification to an existing building or facility must meet the same requirements under 28 C.F.R. § 35.150(b)(1).

The Ninth Circuit explained how these regulations would apply to a sidewalk:

> Congress recognized that it would be unreasonable to require a public entity to extensively renovate all of its existing facilities to bring itself into compliance with the ADA. Once public entities choose to build new facilities or renovate existing ones, however, they can reasonably be required to do so in a manner that complies with specific architectural accessibility standards. For this reason, § 35.150 does not require the City to build curb ramps at every corner during its transition to compliance with the ADA. When the City is already altering or building a sidewalk anyway, § 35.151 requires it to construct a curb ramp at every affected intersection because the additional cost of doing so is minimal.

754 F.3d at 696–97 (internal quotation marks and citations omitted).  *See, e.g.*, *Hamer*, 2017 WL 5969815, at *10, *12 n.7 (stating that "not every chip or crack [on a sidewalk] equates to an ADA or RA violation that requires immediate remediation" and referencing the "new construction/alteration standard").

Applying those concepts here—and assuming for the sake of argument that the City should (and could) have modified an area on Chubby's private property, which it hotly contests (*see* Mot. 14–16)—the City had no duty to upgrade the sidewalk to comply with the ADA unless it undertook any construction or modification on that particular sidewalk.  The City states that it has not performed any substantial construction, improvements, or other work on the section of South Lowell Boulevard where the incident occurred since 1992.  This statement is substantiated by the Declaration of Mark J. Relph, its City Manager.  *See* ECF No. 137-5 at 2.  At the same time, Plaintiff expressly admits a critical fact:  the driveway/parking lot in front of Chubby's and bordering South Lowell Boulevard has been in substantially the same condition since before 1992.  Pl.'s Resp. to Def.'s Statement of Facts 1.

In the end, Plaintiff does not offer a meaningful response to the City's interpretation of the implementing regulations.  Her unsubstantiated allusion to "triggering events which required the City of Littleton to bring the [Chubby's] frontage into compliance with ADA and RA standards of safety and accessibility to blind pedestrians" does not create a genuine issue of material fact.  *See* Resp. 13.  She does not identify those purported events, beyond a general reference to "resurfacing and repaving S. Lowell Blvd."  *See id.*  And the only "evidence" she cites regarding the events is the report by Scott Shea.  *See id.* ("see SHEA report attached hereto as Exhibit A for a detailed discussion of the triggering alterations").  As discussed above, that report is inadmissible because

it was not disclosed and Mr. Shea was not designated as an expert.  Likewise, I reject Plaintiff's attempt to document improvements done in the surrounding area through unverified and undisclosed GoogleEarth satellite photographs attached to Plaintiff's supplemental response.  *See* ECF No. 157-21; *see also* Def.'s Suppl. Reply 7–8 (addressing the inadmissibility of the photographs).

Even though the City is not liable under the ADA, I take this opportunity to encourage the City to work with Erma's and CZ Famco to assess the state of the sidewalk area, to exercise its permissive authority to "order the repair or replacement of said sidewalk by the owner of adjacent and abutting property" per Littleton City Code § 8-2-1 (if necessary), and to actively consider how to improve the area to enhance public safety.

## III.    Third Claim:  Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

Plaintiff's final claim against the City is for a violation of section 504 of the Rehabilitation Act of 1973, as amended.  Second Am. Compl. ¶¶ 72–81 (Third Claim for Relief).  The allegations for the Rehabilitation Claim generally track those for the ADA claim.  *See id.*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a) ("Nondiscrimination under Federal Grants and programs").   "Because [Title II and section 504] involve the same substantive standards," courts frequently analyze them together.  *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009); *see also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999) ("Because the language of

disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge.").  Plaintiff must prove the same elements to prevail under the Rehabilitation Act, *see Miller ex rel. S.M.*, 565 F.3d at 1245, with one additional element:  the program or activity must receive federal financial assistance.  *See Hollonbeck v. United States Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

I concluded above that Plaintiff has not shown, as a matter of law, that the City had a duty to upgrade the Chubby's driveway area to comply with the ADA.  My analysis for the ADA claim applies equally to her Rehabilitation Act claim.  The latter fails for an additional reason:  as explained in footnote 8, *supra*, Plaintiff has not created a disputed issue of material fact on the additional element.  Plaintiff interprets this element to require only that the City "is a recipient of federal funding."  *See* Resp. 12 & n.4 (quoting the City's admission that "it received federal funding from January 1, 2012, to the present for construction of infrastructure within City limits").  But the Rehabilitation Act is not so all-encompassing.  The Tenth Circuit has long held that "the program or activity in question" must receive federal financial assistance.  *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).  Plaintiff references a 2007 federal grant, but the City has submitted conclusive evidence that shows such grant was for a project area that does not include South Lowell Boulevard.  *See* Def.'s Suppl. Reply 5.

Last, because I conclude that Plaintiff's ADA and Rehabilitation Act claims must be dismissed, I need not address the City's argument that Plaintiff cannot recover compensatory damages for violation of either statute because she cannot show intentional discrimination by the City.  *See* Mot. 16–18, Reply 11–12.

## <u>CONCLUSION</u>

The City's Combined Motion to Dismiss and Motion for Summary Judgment [<u>filed June 28, 2018; ECF No. 137</u>] is **granted**.  All claims filed against the City are dismissed with prejudice.

Entered and dated at Denver, Colorado, this 30th day of November, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty