IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-CV-02692-MEH

LUPITA LEWIS,

      Plaintiff,

v.

JAMES T. POWERS;
CITY OF LITTLETON, COLORADO;
NATIONAL FEDERATION OF THE BLIND, COLORADO;
COLORADO CENTER FOR THE BLIND;
CZ FAMCO HOLDINGS LLC; and
ERMA'S MEXICAN FOOD, INC.,

      Defendants.

---

## ORDER ON DEFENDANT CZ FAMCO HOLDINGS LLC'S
## MOTION FOR SUMMARY JUDGMENT

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Lupita Lewis, a visually impaired woman, was injured in December 2013 in an automobile/pedestrian accident. Plaintiff alleges that she was returning from the Colorado Center for the Blind ("CCB") in Littleton, Colorado, to her residence when she became disoriented on the poorly designed and maintained sidewalk area in front of Chubby's restaurant. She wandered into the street and was struck by a vehicle driven by Defendant James Powers. In addition to Mr. Powers and the CCB, Plaintiff is suing the City of Littleton (the "City"); the National Federation of the Blind, Colorado ("NFBC"); CZ Famco Holdings LLC ("CZ Famco"); and Erma's Mexican Food, Inc. ("Erma's").

      All Defendants except for Mr. Powers and Erma's have filed motions to dismiss and/or for summary judgment. Before the Court here is Defendant CZ Famco Holding LLC's Motion for

Summary Judgment [filed August 20, 2018; ECF No. 149].  For the reasons set forth below, I **grant** CZ Famco's motion and dismiss all claims filed against it with prejudice.

## BACKGROUND

### I.      Factual Background

The evidence submitted reveals the following facts viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter.  For the facts articulated by Plaintiff, I consider only the well-supported facts contained in her response brief (ECF No. 169)—not the unsupported facts for which she provided no record citations (*see id.* at 1–11).  As the responding party, it is Plaintiff's burden "to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record."  *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)).  The Court has no obligation "to comb the record" to make Plaintiff's arguments for her.  *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

1.      The Court's Order granting the City's Combined Motion to Dismiss and Motion for Summary Judgment contains a detailed Statement of Facts as to the accident on December 12, 2013; Plaintiff's residence at the McGeorge Mountain Terrace Apartments at 5871 S. Lowell Boulevard, Littleton, Colorado (the "Apartments"); the surrounding area; and each Defendant's knowledge of the area and prior events therein before the accident.  I incorporate that Statement of Facts by reference here because it includes Plaintiff's positions and admissions and provides important background information.  Even so, I am mindful of the parties' respective burdens under Federal Rule of Civil Procedure 56, and my Order considers the evidence presented within the parameters of that Rule.

2.     On the night of the accident on December 12, 2013, Plaintiff was going to her residence from the CCB.  Mot., Def.'s Statement of Facts ¶ 1, ECF No. 149 (admitted in Pl.'s Resp. to Def.'s Statement of Facts 4, ECF No. 169).  She traveled by bus.  *See* Mot. Ex. A, ECF No. 149-1 at 2 (excerpts from Plaintiff's deposition on May 18, 2018).

3.     Plaintiff was familiar with walking north on the sidewalk past Chubby's in the evening.  Def.'s Statement of Facts ¶ 2 (also admitted).  *See also* Mot. Ex. A at 5 ("To enter the Chubby's driveway, there's like a curb.  You have to step off the edge of the driveway to get across from the near side of the driveway to the far side of the driveway to continue on walking north to get to Lowell Way.  And to continue walking on the sidewalk, you have to cross this driveway because it intersects.  And I remember there was a small curb that my white cane detected . . . and . . . my white cane detected that curb or drop-off to enter the driveway . . . .") (excerpts from Plaintiff's deposition, in which she described the Chubby's driveway in detail).

4.     Plaintiff testified under oath that she has never spoken with anyone known to have any relationship with CZ Famco or with any employee or owner of Chubby's about any difficulty navigating the driveway when going past Chubby's.  Def.'s Statement of Facts ¶ 3.[1]

---

[1] Plaintiff "denies" the facts in Paragraphs 3 through 7 of Defendant's Statement of Facts on the basis that she is "'severely' brain injured and her memory and comprehension are affected"; she adds that her ability to understand the questions might have been masked by her daily morphine intake.  Resp. 3–4; *see also id.* at 4 (quoting a doctor's report opining that "Client's relatively strong verbal abilities in day to day conversations mask her more severe deficits and may lead people to overestimate her true abilities and comprehension").  Plaintiff then submits her own Declaration to support her response.  *See* Pl.'s Decl. (Oct. 2, 2018), Resp. Ex. 8, ECF No. 169-8. It would be fundamentally unfair for the Court to rely on Plaintiff's own statements for some key facts and not others.  And the Court will not assume that Plaintiff's Declaration is more accurate than her deposition testimony.  After a careful review of the record, I deem Paragraphs 3 to 7 of CZ Famco's Statement of Facts to be undisputed as qualified, *i.e.*, "Plaintiff testified under oath that . . . "

5.     Plaintiff testified under oath that she did not tell anyone at Chubby's about any problems navigating the driveway when going past Chubby's. *Id.* ¶ 4.

6.     Plaintiff testified under oath that she does not know if any other students at CCB told anyone at Chubby's about any problems navigating the driveway. *Id.* ¶ 5.

7.     Plaintiff testified under oath that she is not aware of anyone at Chubby's who has notice of any problem with the Chubby's driveway. *Id.* ¶ 6.[2]

8.     Plaintiff testified under oath that she has not had any contact with anyone at Chubby's. *Id.* ¶ 7.

---

[2] Plaintiff does not present any contrary evidence to refute this fact. Instead, she offers a conclusory assertion that "Plaintiff may not be aware of anyone at Chubby's who has notice of any problem with the Chubby's driveway, but clearly the cracked and spalled[] pot holes, areas of deterioration, damage and uneven surfaces were apparent to everyone at Chubby's." *See* Resp. 4–5. She then relies on two statements that are also insufficient to create a genuine issue for trial. First, Plaintiff quotes CZ Famco's written discovery response that it "has heard of persons employed at Chubby's Mexican Restaurant having assisted blind pedestrians who have primarily wandered into the parking lot of the Chubby's property." Resp. 5. That statement *may* not be hearsay under Federal Rule of Evidence 801(d)(2), though I am not called upon to resolve that issue here. Nevertheless, the statement is too vague to be dispositive of notice. Even if Chubby's employees have assisted blind pedestrians who "wandered" into the parking lot, factors besides the condition of the driveway could have caused them to stray (*e.g.*, lack of familiarity with the area and varying navigation skills). Second, Plaintiff quotes a statement by her expert, Amy Nangle, that ""an employee wearing a pink jacket and sweeping the parking lot" at Chubby's told her that she has "noticed . . . visually impaired individuals unintentionally walking into the street in front of Chubby's . . . 'all the time.'" *Id.* Unable to name the employee, Ms. Nangle says she identified herself "as the manager of the establishment and the niece of the owner." *Id.* It is not apparent whether Plaintiff has obtained any additional information on this employee through discovery. But a rumor from an unnamed person constitutes hearsay under Federal Rule of Evidence 801(c) and 802; as such, it is not admissible evidence and may not serve to create a genuine issue of material fact for summary judgment purposes. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) ("A third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill. Furthermore, generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." (alterations and internal quotation marks and citations omitted)).

9.      Plaintiff "was familiar with the path of travel along the east side of Lowell."  Final Pretrial Order 13 (Stipulation j), ECF No. 196.

10.     Before the accident, Plaintiff knew that she was crossing Chubby's driveway, which enters Chubby's off South Lowell Boulevard.  Def.'s Statement of Facts ¶ 8 (also admitted).

11.     Plaintiff stopped and made sure she was lined up correctly to cross the driveway.  *Id.* ¶ 9 (also admitted).

12.     Plaintiff oriented herself by listening to, and noting, that there were only cars in the distance between her and the intersection of Bowles and South Lowell Boulevard.  *Id.* ¶ 10 (also admitted).

13.     Plaintiff intended to cross the driveway that intersected the sidewalk on which she was walking north.  *Id.* ¶ 11 (also admitted).

14.     Plaintiff believes she detected the intersecting driveway into Chubby's by a curb or drop off.  *Id.* ¶ 12 (also admitted).

15.     Plaintiff recalls stepping off the curb and nothing further.  *Id.* ¶ 13 (also admitted).

16.     Erma's Mexican Food, Inc., d/b/a "Chubby's" operates a restaurant at 5826 South Lowell Boulevard.  Final Pretrial Order 13 (Stipulation o).

17.     Michael H. Czarnek is the managing member of CZ Famco.  Mot. Ex. B, ECF 149-2, ¶ 1.  The property upon which Chubby's is located is owned by CZ Famco.  *Id.* ¶ 2.  Mr. Czarnek has personal knowledge of the property going back to the 1960's.  *Id.* ¶ 3.

18. Other than the allegations in this lawsuit,[3] Mr. Czarnek is not aware of any physical condition of the sidewalk bordering the Chubby's restaurant on the east side of South Lowell Boulevard, the parking lot, or the driveway entering Chubby's that creates any unreasonable risk or a dangerous condition to the health or safety of the public in general or to a blind person specifically. Def.'s Statement of Facts ¶ 14 (revised to address Plaintiff's denial based on semantics, *see* Pl.'s Resp. to Def.'s Statement of Facts 5–6).[4]

19. Plaintiff wandered into South Lowell Boulevard. *Id.* ¶ 15 (also admitted).

20. CZ Famco is not aware of any other blind pedestrians "wandering" into the traffic lanes of South Lowell Boulevard. *Id.* ¶ 16. However, it is "aware blind persons have been seen in the roadway . . . at multiple occasions." *see* Pl.'s Resp. to Def.'s Statement of Facts 6 (quoting CZ Famco's written discovery responses). In addition, Chubby's employees have assisted blind pedestrians in the parking lot. *Id.* (same).

_____

[3] Plaintiff denies numerous facts listed by CZ Famco purely based on semantics, citing her own accident as contrary evidence. For example, responding to Paragraph 14, she says that the problems with the driveway were identified to Mr. Czarnek by Plaintiff's expert reports. Resp. 5–6. The Court will not embrace Plaintiff's attempt to manufacture a genuine issue of material fact as to CZ Famco's awareness in this way, here or with respect to the undisputed facts listed by CZ Famco in Paragraphs 17 and 19. Furthermore, Plaintiff has not presented contrary evidence to refute this fact. She points only to CZ Famco's statement in written discovery that it "is aware blind persons have been seen in the roadway . . . at multiple locations." This fact is not necessarily tied to safety, however; nor is it unusual for blind people to be crossing in the roadway given the restaurant's proximity to public transportation and CCB's apartments.

[4] Plaintiff has not presented contrary evidence to refute this fact. She first highlights CZ Famco's statement in written discovery that it "is aware blind persons have been seen in the roadway . . . at multiple locations," which I address in the preceding footnote. She next cites CZ Famco's discovery response about unnamed Chubby's employees assisting blind pedestrians in the parking lot. But I have already explained that such assistance might be the result of factors other than dangerous sidewalk conditions. In other words, this is nothing more than an unremarkable "admission" that blind pedestrians have been seen crossing the street in that area—not that there was anything dangerous about doing so, other than the obvious dangers posed by ordinary traffic.

21.     Other than this lawsuit, CZ Famco is not aware of any accidents, incidents, or injuries which have occurred due to a condition of the sidewalk, parking lot, or the driveway on the east side of South Lowell Boulevard bordering the Chubby's restaurant. Def.'s Statement of Facts ¶ 17 (revised to address Plaintiff's denial based on semantics).

22.     Plaintiff has never spoken to Mr. Czarnek. *Id.* ¶ 18 (also admitted).

23.     Other than this lawsuit, CZ Famco has never been advised or told by Plaintiff or any other person about blind persons complaining or having problems navigating north or south along the sidewalk on the east side of South Lowell Boulevard bordering Chubby's because of the condition of the sidewalk, parking lot, or the driveway entering Chubby's. *Id.* ¶ 19 (revised to address Plaintiff's denial based on semantics).

24.     No new construction or improvements have been done to the Chubby's building, parking lot, driveway, and sidewalk areas since before 1992. *Id.* ¶ 20 (also admitted).

25.     The Chubby's building, parking lot, driveway, and sidewalk areas along the frontage of South Lowell Boulevard have been in the same, unaltered condition since before 1992 and indeed since the 1960's. *Id.* ¶ 21 (also admitted).

26.     There has not been any alteration or change to the Chubby's building, parking lot, and sidewalk area that affects or could affect the usability of the building or facility, the parking lot and sidewalk area, or any part of the above. *Id.* ¶ 22 (also admitted).

27.     Only normal maintenance has been performed on the parking lot, driveway, and sidewalk areas—none of which affects the usability of the building, parking lot, or sidewalk. *Id.* ¶ 23 (also admitted).

28.     CZ Famco seals the parking lot surface approximately bi-annually, fills in pot poles in the parking lot, and restripes the parking spaces. *Id.* ¶ 24 (also admitted).

29.     CZ Famco has not performed repairs, renovations, resurfacing, or reconstruction of its parking lot or the curbs, sidewalks, or gutters along the South Lowell Boulevard frontage. *Id.* ¶ 25 (also admitted).

## II.     Procedural History

Plaintiff initiated this action on December 12, 2015, ECF No. 1, and then filed a First Amended Complaint as a matter of course, ECF No. 11.  CZ Famco filed this Motion for Summary Judgment on August 20, 2018.  ECF No. 149.  Plaintiff filed her response on October 4, 2018. ECF No. 169.  On October 22, the City submitted its reply, ECF No. 183.  The Court conducted a Final Pretrial Conference on November 13 and entered the Final Pretrial Order on November 15, ECF No. 196.  Trial is set to begin on February 11, 2019.

On October 12, Plaintiff filed the operative Second Amended Complaint, which adds claims against an additional defendant, Erma's.  ECF No. 176.  In the interest of judicial efficiency, the Court did not require CZ Famco to refile this motion (and thus Plaintiff to refile her response) even though Plaintiff filed a Second Amended Complaint, as the allegations and claims filed against CZ Famco remain the same.

## LEGAL STANDARD

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and

draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I.  First Claim:  Negligence

In her Second Claim for Relief, Plaintiff asserts that CZ Famco was negligent.  Second Am. Compl. ¶¶ 65–71.  The allegations relevant to this Defendant[5] are as follows:

- CZ Famco "knew or should have known that visually disabled persons living at the Residence would use the public sidewalk on the east side of Lowell as a path of travel to gain access to the Residence."  *Id.* ¶ 66.

- Chubby's "took no steps to render the curb and sidewalk on the east side of Lowell accessible to disabled person, including without limitation visually disabled persons such as Ms. Lewis living at the Residence."  *Id.* ¶ 68.

- Chubby's "acted with deliberate indifference to the rights of visually impaired persons living in the Residence, such as Ms. Lewis[,] including without limitation rights created by the ADA and [the Rehabilitation Act]."  *Id.* ¶ 69.

- "Ms. Lewis suffered harms and losses because she lost her way while navigating by cane through the Frontage."  *Id.* ¶ 70.

- CZ Famco's "deliberate indifference . . . in failing to accommodate the needs of disabled persons, including without limitation Ms. Lewis and other visually disabled persons living at the Residence and/or traversing the Frontage on foot[,] proximately caused Ms. Lewis to suffer [enumerated] harms and losses."  *Id.* ¶ 71.

CZ Famco responds that it did not owe Plaintiff a duty "to prevent her error in walking into the roadway," and it had no notice of foreseeable harm to Plaintiff.  Mot. 10–12.

---

[5] Within her Second Claim, Plaintiff also asserts a negligence claim against the City, NFBC, CCB, and Chubby's; however, I address those claims in separate orders.  Also, Plaintiff continually blurs the line between CZ Famco, Chubby's and Erma's, without establishing it is appropriate to interchange the entities for purposes of liability.  Although my Order includes the allegations against Chubby's and Erma's for background purposes, I limit my analysis to Plaintiff's specific arguments and allegations relating to CZ Famco and the Chubby's property.

Both parties' briefs include a minimal discussion of the negligence standard, with very little legal analysis. To recover on a negligence claim under Colorado law, Plaintiff must establish that (1) CZ Famco owed her a legal duty of care; (2) CZ Famco breached that duty; (3) Plaintiff was injured; and (4) CZ Famco's breach caused that injury. *See Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). "Of these, duty is the threshold element. Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise." *Id.* "A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987).

"Whether a particular defendant owes a legal duty to a particular plaintiff is a question of law." *Id.* at 57. "The court determines, as a matter of law, the existence and scope of the duty— that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection." *Id.* (quoting *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980)). Colorado courts consider several factors to determine whether a legal duty existed upon a defendant: "(1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, (3) the magnitude of the burden of guarding against injury or harm, and (4) the consequences of placing the burden upon the [defendant]." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987) (alterations in original) (numbering added) (quoting *Smith v. City & Cty. of Denver*, 726 P.2d 1125, 1127 (Colo. 1986)). "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Whitlock*, 744 P.2d at 57.

It is difficult to decipher the essence of Plaintiff's negligence theory. The Second Amended Complaint seems to assert a "fail[ure] to accommodate the needs of disabled persons." Second Am. Compl. ¶ 71. Plaintiff continues that theme in her response brief when she talks about negligence being a "failure to act," presumably in connection with CZ Famco's failure to maintain or repair the sidewalk and bring it into compliance with City and ADA standards. *See* Resp. 18–19 (relying on an undeveloped citation to "CJI 9:6"); *see also* Resp. 18 (phrasing the duty in terms of "a duty to bring the 160 feet of the Chubby's driveway and parking lot into compliance with standards long ago established" by the City and through the ADA). If Plaintiff's negligence claim is premised upon nonfeasance, then she must establish a "special relationship" with CZ Famco—a key legal principle that she does not even mention in her brief. *See N.M. ex rel. Lopez v. Trujillo*, 397 P.3d 370, 375 (Colo. 2017) (explaining that "[a]bsent such a special relationship, . . . as a matter of law and in accordance with [Colorado] precedent," a defendant does not owe a plaintiff a duty in cases of nonfeasance). *See generally* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984) (distinguishing active misconduct/misfeasance from a failure to take steps to protect someone from harm/nonfeasance).

Shifting gears, Plaintiff also states in her response that CZ Famco has a "duty to provide a safe path of travel for blind pedestrians" and asks the Court to apply traditional negligence principles. *See* Resp. 2, 18. She cites a few cases to support this theory but does not apply them to the facts.

Then, muddying the waters even further, Plaintiff quotes case law about "negligence per se," with citations to the Littleton City Code. *See id.* at 19–20. She seems to argue that CZ Famco

is negligent per se because it failed to comply with Littleton law on the upkeep of public sidewalks and commercial driveways. *See id.* But for this last theory, she relies almost exclusively on the report of Scott M. Shea, *see id.* at 20. As discussed at the Final Pretrial Conference on November 13, 2018, the Court will not consider Mr. Shea's "expert report" (*see* ECF No. 144-1). The report is inadmissible given Plaintiff's failure to disclose it and her corresponding failure to designate Mr. Shea as an expert.

Given Plaintiff's scattershot approach and the dearth of accompanying analysis, it is difficult for the Court to conduct an in-depth examination of her three shifting negligence theories. A party's legal theory must have some defined boundaries to inform and guide the Court. *See Perry v. AT&T Operations*, No. 09-cv-00894-JLK, 2011 WL 41964, at *1 (D. Colo. Jan. 6, 2011) (noting that the plaintiffs' summary judgment theory of relief and briefing were inadequate "[i]n both form and substance," that plaintiffs characterized claims "in only the most general terms" and supported their claims with legal conclusions and "minimal and unpersuasive legal authority," and that the briefing contained "argument on disputed points of fact" and thus read more like a trial brief).

Even without a well-defined theory of negligence, my analysis necessarily focuses on the threshold duty question: Did CZ Famco owe a duty to Plaintiff under the circumstances of this case? Had Plaintiff been injured when she was walking from the bus stop to dine at Chubby's, I might answer this question in the affirmative. After all, it seems to me that a special relationship would arguably exist between CZ Famco (as a possessor of land) and Plaintiff (as an invited entrant), imposing a duty in the case of passive nonfeasance—here, a purported failure to keep the frontage road safe and in compliance with applicable laws. *See N.M. ex rel. Lopez*, 397 P.3d at

374.  But that is not the scenario.  It is undisputed that Plaintiff (who advised her traveling companion, Shawn Spears of CCB, that she was "okay getting back to [her] apartment" and she knew where she was going) had just dismounted from a bus and was walking *from* the bus stop on the frontage road that borders Chubby's *to* the Apartments.  She was crossing the street (heading *away* from Chubby's) when she was hit by a car driven by a person with absolutely no relationship to CZ Famco.

Applying the relevant factors to this scenario, I first consider "the risk involved."  *Taco Bell, Inc.*, 744 P.2d at 46.  It is obvious from this lawsuit that the risk is very serious.  A blind pedestrian can get hit by a car crossing the street, as happened to Plaintiff.

Second, I consider "the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct."  *Id.*  This factor weights strongly against imposing a duty on CZ Famco to protect Plaintiff (and other blind pedestrians who have just taken public transportation and/or who are walking in the area) by providing "a safe path of travel," *see* Resp. 2.  Plaintiff's accident, though tragic, was not foreseeable given the lack of notice of a dangerous condition to CZ Famco.  For instance, it is undisputed that:

- Plaintiff testified under oath that she has never spoken to anyone known to have any relationship with CZ Famco or with any employee or owner of Chubby's about any difficulty navigating the driveway when going past Chubby's.  *See supra* Statement of Facts ¶ 4.

- Plaintiff testified under oath that she did not tell anyone at Chubby's about any problems navigating the driveway when going past Chubby's.  *See id.* ¶ 5.

- Plaintiff testified under oath that she does not know if any other students at CCB told anyone at Chubby's about any problems navigating the driveway.  *See id.* ¶ 6.

- Plaintiff testified under oath that she is not aware of anyone at Chubby's who has notice of any problem with the Chubby's driveway.  *See id.* ¶ 7.

14

- Plaintiff testified under oath that she has not had any contact with anyone at Chubby's. *See id.* ¶ 8.

- Other than the allegations in this lawsuit, Mr. Czarnek is not aware of any physical condition of the sidewalk bordering the Chubby's restaurant on the east side of South Lowell Boulevard, the parking lot, or the driveway entering Chubby's that creates any unreasonable risk or a dangerous condition to the health or safety of the public in general or to a blind person specifically. *See id.* ¶ 18.

- CZ Famco is not aware of any other blind pedestrians wandering into the traffic lanes of South Lowell Boulevard, although it is aware that blind persons have been seen in the roadway on multiple occasions. In addition, Chubby's employees have assisted blind pedestrians in the parking lot. *See id.* ¶ 20.

- Other than this lawsuit, CZ Famco is not aware of any accidents, incidents, or injuries which have occurred due to a condition of the sidewalk, parking lot, or the driveway on the east side of South Lowell Boulevard bordering the Chubby's restaurant. *See id.* ¶ 21.

- Plaintiff has never spoken to Mr. Czarnek. *See id.* ¶ 22.

- Other than this lawsuit, CZ Famco has never been advised or told by Plaintiff or any other person about blind persons complaining or having problems navigating north or south along the sidewalk on the east side of South Lowell Boulevard bordering Chubby's because of the condition of the sidewalk, parking lot, or the driveway entering Chubby's. *See id.* ¶ 23.

*See also* Order on Defendant City of Littleton's Combined Motion to Dismiss and Motion for Summary Judgment, Statement of Facts ¶ 33 ("Ms. Lewis did not tell anyone from Chubby's about any problems navigating the area in front of the Chubby's driveway."); ¶ 35 ("Ms. Lewis has not had any contact with anyone at Chubby's."). Likewise, the other Defendants were not on notice that there was a problem with the sidewalk area in question. *See id.* ¶¶ 20–21, 23, 32 (describing the City's lack of knowledge and notice); ¶¶ 25–26, 31 (describing CCB's lack of knowledge and notice); ¶¶ 27–29 (describing NFBC's lack of knowledge and notice).

CZ Famco has presented undisputed evidence that neither it nor Chubby's received any complaints about the area in question and that no other accidents have occurred in that area. In

response, Plaintiff has presented evidence that other blind pedestrians have crossed the street nearby and that Chubby's employees have assisted blind pedestrians in the parking lot. As discussed above, that evidence is not necessarily indicative of a dangerous condition. Besides, Plaintiff is familiar with the area and declined Mr. Spears's offer to help her get home from the bus stop. *See id.* ¶¶ 11, 13. Against this backdrop, I conclude that Plaintiff has not presented evidence to create a factual dispute as to foreseeability.

Third, I consider "the magnitude of the burden of guarding against injury or harm." *Taco Bell, Inc.*, 744 P.2d at 46. The parties have not briefed this issue, but it seems self-evident that CZ Famco would incur at least some expense if it brought this sidewalk and driveway area into compliance with the ADA, as Plaintiff suggests is necessary.

Last, I consider "the consequences of placing the burden on" CZ Famco. *Id.* Again, the parties have not briefed this issue. It seems self-evident, however, that any burden imposed on CZ Famco would have to apply equally to nearby businesses between the bus stop and the residence. Such a burden might deter businesses from operating near residences like the Apartments, to the detriment of the neighborhood and CCB's program. It would also be difficult to define the parameters of the businesses' respective responsibilities. Would they just have to maintain their sidewalks or upgrade them too? Would they have to do so even if the ADA did not require compliance by its terms? How quickly would they need to shovel on a bad-weather day? What about clearing leaves and ice? Would they have to assist blind pedestrians in crossing the street if they noticed them crossing and they seemed disoriented? And, on a different note, is this last type of help something that blind pedestrians who are enrolled in a program to learn independence and skills even want to receive?

16

Considering the factors relevant to negligence, I conclude Plaintiff has not presented any facts to support the proposition that "reasonable persons would recognize a duty and agree that it exists." *See Whitlock*, 744 P.2d at 57. Although I have found that CZ Famco is not liable to Plaintiff for negligence, a subsequent court's duty analysis (particularly as to foreseeability) will be markedly different if another accident occurs near the frontage road that parallels Chubby's. Therefore, I take this opportunity to encourage CZ Famco to carefully maintain the sidewalk area.

## II. Second Claim: Violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182

In her next claim, Plaintiff asserts that CZ Famco (and Chubby's) violated Title III of the ADA. Second Am. Compl. ¶¶ 88–93 (Fifth Claim for Relief). Whereas Title II covers discrimination by government entities, Title III covers discrimination by places of public accommodation engaged in interstate commerce, including restaurants. *See Moore v. Prison Health Servs.*, 24 F. Supp. 2d 1164, 1167 (D. Kan. 1998).

42 U.S.C. § 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Relevant here, section 12182(b)(2) specifically prohibits discrimination in the form of "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).

In support of her ADA claim, Plaintiff asserts that Chubby's is a public accommodation under 42 U.S.C. § 12181(7), that she is a beneficiary of Title III because she is legally blind, and that Chubby's denied her "opportunities to participate in or benefit from its goods, services,

privileges, or accommodations." Second Am. Compl. ¶¶ 90–92. More specifically, she asserts that "Chubby's, by failing to provide a safe path of travel through the Frontage, denies visually disabled persons, including without limitation Ms. Lewis, opportunities to participate in or benefit from its goods, services, privileges or accommodations, and, by its failure to remove architectural and communication barriers to ensure that no person with a disability, including without limitation Ms. Lewis, is excluded or denied goods, services, facilities, privileges, advantages, and accommodations." *Id.* ¶ 93. She does not include any allegations about CZ Famco except in the prayer for relief. *See id.* 16–17 (seeking "[i]njunctive relief . . . requiring CZ Famco and Chubby's to modify the Frontage so as to remove architectural barriers impeding disabled persons' access to its goods, services, facilities, privileges, advantages, and accommodations"). Because CZ Famco does not take issue with this omission, I proceed to the merits.

CZ Famco first argues that section 12182(a) does not apply to Plaintiff because she was not a client or customer at the time of the incident in question. *See* Mot. 7–8, 12–13 (citing 28 C.F.R. § 36.202(d), which defines "individual or class of individuals" to refer to "the clients or customers of the public accommodation"). On its face, this argument has appeal. After all, it makes no sense for Plaintiff to be speaking of access to Chubby's goods and services when she was walking away from the restaurant and toward her residence at the time of the incident. Granted, Plaintiff identifies herself as a customer of Chubby's and speaks of there being "no detectible pedestrian path to the entrance of Chubby's" in a Declaration filed in response to this motion, *see* ECF No. 169-8 at ¶¶ 3–4. But as discussed in detail below, per the allegations in the Second Amended Complaint, this lawsuit is clearly about the condition of the sidewalk on the frontage road and the accident in 2013, not Plaintiff's inability to patronize Chubby's.

In any event, courts disagree as to whether section 12182(a) is limited to clients and customers. *See Christ v. Univ. of Findlay*, No. 17-cv-00713, 2018 WL 4184339, at *3–*4 (S.D. Ohio Aug. 31, 2018) (citing cases); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 678–79 (2001) (noting that the reference to "clients or customers" appears in section 12182(b)). The parties have not presented any cases in which the Tenth Circuit or this district court have spoken on this topic, and my research revealed none. Absent more compelling case law and argument, I decline to resolve the ADA claim in CZ Famco's favor as a matter of law on this basis.

CZ Famco next argues that the ADA did not impose a duty to bring its existing facilities into compliance with its terms. More specifically, it states that it was not required to design and construct facilities that are readily accessible to, and usable by, individuals with disabilities as a matter of law because there have been no qualifying alterations or change to the sidewalk area since the ADA went into effect on January 26, 1992. *See* Mot. 8–9. I agree.

"Discrimination under § 12182(a) includes 'a failure to design and construct facilities . . . that are readily accessible to and usable by individuals with disabilities.'" *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1217 (10th Cir. 2014) (quoting 42 U.S.C. § 12183(a)(1)). But even as a public entity, CZ Famco was not required to immediately alter all existing facilities to comply with the ADA when it went into effect. *See* Resp. 13 (conceding that "[b]ecause Chubby's parking lot and driveway were constructed before 1992, it is not governed by the 'new construction' provisions of Title III"). The ADA applies only to new construction with a "first occupancy after January 29, 1993," *see* 28 C.F.R. § 36.401, or to an "alteration to a place of public accommodation or a commercial facility" undertaken after January 26, 1992, "that affects or could affect the usability of the building or facility or any part thereof," *see id.* § 36.402.

Alterations include, but are not limited to, "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." *Id.* § 36.402(b)(1). However, "[n]ormal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility." *Id.*

The following facts are undisputed:

- No new construction or improvements have been done to the Chubby's building, parking lot, driveway, and sidewalk areas since before 1992. *See supra* Statement of Facts ¶ 24.

- The Chubby's building, parking lot, driveway, and sidewalk areas along the frontage of South Lowell Boulevard have been in the same, unaltered condition since before 1992 and indeed since the 1960's. *Id.* ¶ 25.

- There has not been any alteration or change to the Chubby's building, parking lot, and sidewalk area that affects or could affect the usability of the building or facility, the parking lot and sidewalk area, or any part of the above. *Id.* ¶ 26.

- Only normal maintenance has been performed on the parking lot, driveway, and sidewalk areas—none of which affects the usability of the building, parking lot, or sidewalk. *Id.* ¶ 27.

- CZ Famco seals the parking lot surface approximately bi-annually, fills in pot poles in the parking lot, and restripes the parking spaces. *Id.* ¶ 28.

- CZ Famco has not performed repairs, renovations, resurfacing, or reconstruction of its parking lot or the curbs, sidewalks, or gutters along the South Lowell Boulevard frontage. *Id.* ¶ 29.

At the same time, Plaintiff has not produced any evidence to create a genuine dispute as to whether CZ Famco altered or changed its facilities after 1992 such that it was required to comply with the ADA to make the sidewalk area readily accessible to and usable by individuals with disabilities, like her. She cites *Kinney v. Yerusalim*, 9 F.3d 1067, 1075 (3d Cir. 1993), for the

proposition that "resurfacing of the city streets is an alteration within the meaning of 28 C.F.R. 35.151(b) which must be accompanied by the installation of curb cuts under 28 C.F.R. 35.151(e)." *See* Resp. 12. But as just stated, Plaintiff admitted (without any reservation) that CZ Famco has not performed repairs, renovations, *resurfacing*, or reconstruction of its parking lot or the curbs, sidewalks, or gutters along the South Lowell Boulevard frontage. *See* Resp. 4 (admitting ¶ 25 of CZ Famco's Statement of Undisputed Facts).

Plaintiff's only remaining argument for her claim that a qualifying alteration occurred is that the restripe of the parking lot, *see supra* Statement of Facts ¶ 28, was an alteration within the meaning of the ADA under *Hamblen v. Diamante Crossroads*, No. CV-08-0561-PHX-JAT, 2009 WL 825809 (D. Ariz. Mar. 30, 2009). *See* Resp. 11–12. Once again, she relies exclusively on the inadmissible report by Scott Shea. *See id.* (referencing "Ex. 31, Shea report, pp. 11–12"). Moreover, the context of *Hamblen* is readily distinguishable because the court there was not resolving a legal question within a summary judgment motion. Rather, it found that the plaintiff's conclusory allegations that the defendant altered its parking lots and sidewalks in front of its store were sufficient to withstand a challenge under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6); in so finding, the court reasoned that the information needed for further specificity was unavailable to the plaintiff and was only likely to be obtained through discovery. 2009 WL 825809, at *3–4. Regardless, the court did not even make a definitive proclamation on this issue. It stated only that it "cannot conclude that the restriping of a parking lot or sidewalk renovation is not an 'alteration' within the meaning of the ADA." *Id.* at *4.[6]

---

[6] CZ Famco also argues that *Hamblen* is inapposite because Plaintiff's complaint "does not in any manner allege[] that striping of Chubby's parking lot is non-compliant with the ADA." Reply 4.

Last, CZ Famco argues that it did not (and does not) need to remove any architectural barriers in its existing facilities. The ADA requires barrier removal in existing facilities where such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable," in turn, is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9); *see also Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1002 (10th Cir. 2001) (listing relevant factors).

More specifically, CZ Famco contends that the "readily achievable" provision does not apply to this type of situation. The relevant implementing regulations certainly make clear that the ADA is concerned with a plaintiff's effort to gain access to a public accommodation. For instance, 28 C.F.R § 36.304(c) prioritizes the measures that a public accommodation is "urged to take . . . to comply with the barrier removal requirements." The top priority is that "a public accommodation should take measures to provide access to a place of public accommodation *from public sidewalks, parking, or public transportation*." *Id.* § 36.304(c)(1) (emphasis added). Such measures include installing an entrance ramp, widening entrances, and providing accessible parking spaces. *Id.* The next priority is that "a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public." *Id.* § 36.304(c)(2). For instance, the public accommodation could "adjust[] the layout of display racks, rearrang[e] tables, provid[e] Brailled and raised character

---

Although this argument accurately characterizes the Second Amended Complaint, the placement of the striping arguably relates to Plaintiff's argument (albeit intermittent) that pedestrian safety is compromised by the need to step around parked cars when walking on the frontage road. *See, e.g.*, ECF No. 169-3 at 7–9 (report of Anne Stodola). Because *Hamblen* is otherwise distinguishable, I choose not to enter this morass unnecessarily.

signage, widen[] doors, provid[e] visual alarms, and install[] ramps." *Id.* The third priority is to "take measures to provide access to restroom facilities." *Id.* § 36.304(c)(3). The last priority is a catch-all provision, which instructs a public accommodation to "take any other measures to provide access to the goods, services, facilities, privileges, advantages, or accommodations." *Id.* § 36.304(c)(4).

CZ Famco's position that section 12182(b)(2)(A)(iv) is not at issue because this case does not concern a disabled individual's inability to gain access *to* a public accommodation, as necessary per the above regulations, is well founded. Plaintiff's Title III claim unambiguously pinpoints the condition of the sidewalk on the frontage road as the alleged violation. *See* Second Am. Compl. ¶ 48 ("The Frontage denies visually disabled persons access to services, programs, or activities of Littleton and the Residence."); ¶ 93 (referencing Chubby's "fail[ure] to provide a safe path of travel through the frontage"); *see also id.* ¶¶ 40–53, 57 (recounting the hazards of the frontage road). After all, Plaintiff was not seeking to gain access to Chubby's when she was injured; to the contrary, she was walking away from it to the Apartments. Notably, the Second Amended Complaint does not contain a single allegation about Plaintiff's inability to frequent Chubby's as a customer. Paragraph 93 does make a vague reference to exclusion or denial of goods, services, facilities, privileges, advantages, and accommodations, but it merely recites statutory language; it would be a stretch to say it somehow relates to Plaintiff's inability to gain access to Chubby's. The prayer for relief seeks only "[i]njunctive relief . . . requiring CZ Famco and Chubby's *to modify the Frontage*," followed by the same statutory language. *Id.* at 16.

Plaintiff makes a last-ditch effort to expand her claim to encompass access to the restaurant itself—and to effectively add a new Title III claim—via her response and the Final Pretrial Order. The response attaches a Declaration from Plaintiff in support of the following "undisputed facts":

- "The Chubby's restaurant was and remains inaccessible to low vision visually impaired patrons without assistance from sighted or a partial vision individual."

- "Plaintiff and CCB students were and remain customers of the Chubby's restaurant."

- "There is no detectible pedestrian path of travel to the entrance of Chubby's restaurant or across the Chubby's driveway."

- "It was and remains common knowledge among all CCB students and staff that the Chubby's driveway and parking lot was/is difficult to navigate and a barrier to entry into the restaurant which caused and will cause visually impaired persons to be unable to utilize[] the services of Chubby's restaurant because of the difficulty in entering the restaurant and the danger of being struck by a motor vehicle while searching for the entrance, pedestrian path of travel, and the sidewalk."

- "There was/is no safe accessible pedestrian path of travel for visually impaired persons from the public bus stop at the South corner of the Chubby's driveway to the entrance to the Chubby's restaurant."

Pl.'s Undisputed Facts ¶¶ 2–4, 7, 8, Resp. 7–8; *see also* Decl. of Lupita Lewis, ECF No. 169-8 (parallel language). Plaintiff also adds language about the inability to access the Chubby's restaurant in the Final Pretrial Order: "Plaintiff claims that the Chubby's parking lot and driveway lack an accessible public path of travel for blind pedestrians along its property boarding [sic] S. Lowell Blvd *and to its front door*, which acts as a barrier to accessing Chubby's restaurant and service and facilities North and South of the Chubby's restaurant, including CCB's student housing." Final Pretrial Order 3 (emphasis added).

Plaintiff did briefly mention during her deposition that she "could never find the entrance to Chubby's." *See* ECF No. 143-4 at 5. But the Second Amended Complaint makes no allegations

about her ability to find (or navigate to) the Chubby's entrance or about her experiences as a customer or potential customer at that restaurant. A plaintiff cannot for the first time in responding to a motion for summary judgment inject new theories of liability absent permission from the Court. An issue raised for the first time in summary judgment briefing "may properly be considered a request to amend the complaint" under Federal Rule of Civil Procedure 15. *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011). The decision to grant leave to amend the pleadings is within the trial court's discretion. *Id.* "[A] court properly denies leave where 'a late shift in the thrust of the case will prejudice the other party in maintaining his defense upon the merits.'" *Id.* (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) (alterations omitted)). Even "[t]he liberalized pleading rules do not allow [a plaintiff] 'to wait until the last minute to ascertain and refine the theories on which [she] intend[s] to build [her] case.'" Id. (quoting *Evans*, 936 F.2d at 1091). Applying these principles here, I decline to grant leave to amend the pleadings, yet again, at this late juncture, with trial less than three months away.

As pleaded, Plaintiff's Title III claim fails as a matter of law based on the undisputed facts. Nevertheless, I also take this opportunity to encourage CZ Famco to at least consider making the improvements suggested by Plaintiff, particularly if the cost is as low as $4,100, as estimated by Plaintiff's expert. *See* Resp. Ex. 3, ECF No. 169-3 at 8. The ADA does not mandate any upgrades until CZ Famco alters or changes the facility, as defined by the Act, but it would certainly provide a useful road map for such upgrades.

## **CONCLUSION**

Defendant CZ Famco Holdings LLC's Motion for Summary Judgment [filed August 20, 2018; ECF No. 149] is **granted**.  All claims filed against CZ Famco are dismissed with prejudice.

Entered and dated at Denver, Colorado, this 30th day of November, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty