IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-CV-02692-MEH

LUPITA LEWIS,

    Plaintiff,

v.

JAMES T. POWERS;
CITY OF LITTLETON, COLORADO;
NATIONAL FEDERATION OF THE BLIND, COLORADO;
COLORADO CENTER FOR THE BLIND;
CZ FAMCO HOLDINGS LLC; and
ERMA'S MEXICAN FOOD, INC.,

    Defendants.

## ORDER ON DEFENDANT COLORADO CENTER FOR THE BLIND'S MOTION FOR SUMMARY JUDGMENT

**Michael E. Hegarty, United States Magistrate Judge**

    Plaintiff Lupita Lewis, a visually impaired woman, was injured in December 2013 in an automobile/pedestrian accident. Plaintiff alleges that she was returning from the Colorado Center for the Blind ("CCB") in Littleton, Colorado, to her residence when she became disoriented on the poorly designed and maintained sidewalk area in front of Chubby's restaurant. She wandered into the street and was struck by a vehicle driven by Defendant James Powers. In addition to Mr. Powers and the CCB, Plaintiff is suing the City of Littleton, Colorado (the "City"); the National Federation of the Blind, Colorado ("NFBC"); CZ Famco Holdings LLC ("CZ Famco"); and Erma's Mexican Food, Inc. ("Erma's").

    All Defendants except for Mr. Powers and Erma's have filed motions to dismiss and/or for summary judgment. Before the Court here is Defendant Colorado Center for the Blind's Motion

for Summary Judgment [filed August 17, 2018; ECF No. 143]. Plaintiff sues CCB for negligence and a violation of the Rehabilitation Act of 1973. For the reasons set forth below, I **grant** CCB's motion and dismiss all claims filed against CCB with prejudice.

## BACKGROUND

I.   **Factual Background**

The evidence submitted reveals the following facts viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter. For the facts articulated by Plaintiff, I consider only the well-supported facts contained in her response brief—not the unsupported facts for which she provided no record citations. *See, e.g.*, ECF No. 173 at 1–4. As the responding party, it is Plaintiff's burden "to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)). The Court has no obligation "to comb the record" to make Plaintiff's arguments for her. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

1.   The Court's Order granting the City's Combined Motion to Dismiss and Motion for Summary Judgment contains a detailed Statement of Facts as to the accident on December 12, 2013; Plaintiff's residence at the McGeorge Mountain Terrace Apartments at 5871 South Lowell Boulevard, Littleton, Colorado (the "Apartments"); the surrounding area; and each Defendant's knowledge of the area and prior events therein before the accident. I incorporate that Statement of Facts by reference here because it includes Plaintiff's positions and admissions and provides important background information. Even so, I am mindful of the parties' respective burdens under

Federal Rule of Civil Procedure 56, and my Order considers the evidence presented within the parameters of that Rule.

2.  CCB is a non-profit training center that offers a variety of education and training programs for the blind. Mot., Def.'s Statement of Facts ¶ 1, ECF No. 143 (admitted in Pl.'s Resp. to Def.'s Statement of Facts 4, ECF No. 173).

3.  CCB generates revenue by entering into fees for service arrangements on behalf of its students. Students' expenses are generally paid for by state-run vocational rehabilitation agencies in the state where the CCB resident or participant resides. *Id.* ¶ 2 (also admitted).

4.  CCB does not receive federal funding. *Id.* ¶ 3.[1]

5.  As part of CCB's program, students are required to take cane-travel classes and are expected to take public transportation. Students are informed of the expectation to take public transportation before their arrival to the program. *Id.* ¶ 4 (also admitted).

---

[1] Plaintiff does not present any contrary evidence to refute this fact. Her response states, "CCB receives federal funding from the U.S. Department of Education distributed through Federal vocational rehabilitation grants to state agencies for the blind and vocational rehabilitation." Resp. 4. But this statement is wholly unsupported. Plaintiff attaches a one-page printout from a U.S. Department of Education website with the following sentence highlighted: "Note: in 24 states, awards are made to both the state agency for the blind and the state general agency; in the other 32 states and territories, funds are distributed to a combined agency only." *Id.* Ex. 9, ECF No. 177-10. CCB alleges that this statement is hearsay and that Plaintiff does not offer an exception to the hearsay rule or an affidavit to authenticate it. CCB Reply 4, ECF No. 185. I need not reach the admissibility question, though, because nothing on the face of the printout even links CCB to any federal funding. *See* Reply 4, ECF No. 185 ("[T]he content of the page itself does not state that CCB receives federal funding; indeed, the page does not even reference CCB. The page also does not reference the Oregon Commission for the Blind, which Plaintiff has asserted paid CCB for her tuition and rent. And, there is no content on which to base a conclusion that CCB receives 'indirect' federal funding, either. Furthermore, CCB is [a] public charity, not a 'state agency for the blind and vocational rehabilitation' that may (or may not) receive federal grants.").

6. CCB operates its training center at 2233 West Shepperd Avenue, Littleton, Colorado 80120. *Id.* ¶ 5 (also admitted).

7. Rocky Mountain Center for the Blind ("RMCB") owns the McGeorge Mountain Terrace Apartments at 5871 South Lowell Boulevard in Littleton, Colorado (the "Apartments"). *Id.* ¶ 6 (also admitted).

8. CCB is located about two miles from the Apartments. *Id.* ¶ 7 (also admitted).

9. RMCB purchased the Apartments so that CCB would have a residence for its students. *Id.* ¶ 8 (also admitted).

10. Plaintiff is legally blind. *Id.* ¶ 9 (also admitted).

11. Plaintiff attended classes at CCB on several occasions, including September 2013 through December 2013. She participated in CCB's Independence Training Program and was not on an "individualized education plan." *Id.* ¶ 10 (also admitted).

12. In December 2013, Plaintiff resided at the Apartments. *Id.* ¶ 11 (also admitted).

13. As part of CCB's program, its cane-travel instructors teach proper cane technique and work on routes from CCB to the Apartments. *Id.* ¶ 12 (also admitted). A restaurant called Chubby's is located at 5826 South Lowell Boulevard, on the east side of South Lowell Boulevard and between the bus stop referenced in this case and the Apartments. *Id.* ¶ 13 (also admitted). Erma's d/b/a "Chubby's" operates the restaurant. Final Pretrial Order 13 (Stipulation o).

14. CZ Famco owns the property on which Chubby's is located. *Id.* (Stipulation p).

15. CCB provides specific instruction on how to cross the Chubby's driveway. Def.'s Statement of Facts ¶ 15 (also admitted). As far as CCB was aware, the students had done so without issue. *Id.*[2]

16. Plaintiff received training on how to travel the route between CCB and the Apartments, and specifically the route between West Bowles Avenue and the Apartments, which includes the area in front of Chubby's. *Id.* ¶ 16.[3]

17. Plaintiff walked between the Apartments and West Bowles Avenue, where the bus stop is (and which necessarily includes the driveway or sidewalk area in front of Chubby's) more than ten times a day, either for the bus or for shopping or sometimes to escort other students with less-developed travel skills. *Id.* ¶ 17 (also admitted).

18. On December 12, 2013, Plaintiff took a public bus from CCB to return home to the Apartments. *Id.* ¶ 18 (also admitted).

19. Plaintiff rode the bus that evening with Shawn Spears, who is also blind and who is an instructor at CCB. *Id.* ¶ 19 (also admitted).

20. The bus dropped Plaintiff off near the intersection of West Bowles Avenue and South Lowell Boulevard. *Id.* ¶ 20 (also admitted).

---

[2] Plaintiff does not present any evidence to dispute CCB's lack of notice in this regard. Her denial erroneously attributes Chubby's observations and actions to CCB. She quotes a discovery response in which CZ Famco (not CCB) stated that unnamed Chubby's employees (not CCB employees) "hav[e] assisted blind pedestrians who have primarily wandered into the parking lot" at Chubby's. *See* Resp. 5. Similarly, she quotes an excerpt from Amy Nangle's expert report that refers to unnamed Chubby's employees seeing visually impaired individuals walking into the street in front of Chubby's. *Id.*

[3] Plaintiff denies this fact as part of a blanket denial, *see* Resp. 4, but does not present any contrary evidence to refute it. This fact is deemed admitted under Rule 56(c)(1).

21. Plaintiff testified that Mr. Spears asked her if she was "okay" getting back to her apartment and that she responded as follows: "Yeah. I said, No, I've got it. I know where I'm going. I'm—I'm fine." *Id.* ¶ 21 (also admitted).

22. Plaintiff "was familiar with the path of travel along the east side of Lowell." Final Pretrial Order 13 (Stipulation j).

23. After getting off the bus, Plaintiff walked west on West Bowles Avenue to the intersection with South Lowell Boulevard. She used a white cane for navigation purposes and had used this kind of cane "quite a lot." Def.'s Statement of Facts ¶ 22 (alterations omitted) (also admitted).

24. Plaintiff then turned right (north) on to the east side of South Lowell Boulevard to continue walking toward the Apartments. *Id.* ¶ 23 (also admitted).

25. As Plaintiff walked along the driveway and sidewalk area in front of Chubby's, she continued to use her case and her sense of hearing to navigate. *Id.* ¶ 24 (also admitted).

26. Plaintiff testified that it was quiet at the time she was navigating from the bus stop to the Apartments. *Id.* ¶ 25 (also admitted).

27. Plaintiff wandered into South Lowell Boulevard, where she was struck by a car driven by Defendant Powers and seriously injured. *Id.* ¶ 26 (also admitted).

28. Except for this incident, CCB is not aware that any of its students or staff members have unintentionally walked into South Lowell Boulevard from Chubby's driveway or parking lot. *Id.* ¶ 27.[4]

---

[4] Plaintiff does not present any contrary evidence to refute this fact. Her response consists of the following confusing statement: "Again, if it is true that CCB is unaware that students or staff had

29. Officer Steve Keliiholokai, who has been employed by the Littleton Police Department for nineteen years, was on call the night of the accident. He is a Level III accident investigator who has investigated 1,500 accidents. *Id.* ¶ 29 (also admitted).

30. Officer Keliiholokai is not aware of any other accident in Littleton involving a blind person in the street. Regarding South Lowell Boulevard specifically, he testified that it has been his observation "that they . . . know where they're going. I don't know how they do it, but they do it." *Id.* ¶ 30 (also admitted).

31. According to Officer Keliiholokai, the Littleton Police Department is aware that blind people lived in the Apartments and that traffic officers "were to do traffic enforcement for speeders on that road" because blind people live in the area. *Id.* ¶ 31 (also admitted).

32. CCB's expert in cane travel and cane-travel training, Edward Bell, has opined that such training must be done "in all types of publicly available environments," including areas like the one in front of Chubby's where the accident occurred, "where sidewalks may not be in good repair, may be incomplete, or may be inconsistent." *Id.* ¶ 32 (also admitted).

33. Dr. Bell has also opined that the number of successful trips across the frontage area of Chubby's by CCB students—as many as 75,000 successful trips since 2012—suggests that the training environment at this location was not inherently dangerous or inappropriate for CCB students. *Id.* ¶ 33.[5]

---

unintentionally walked into South Lowell Boulevard from the Chubby's driveway or parking lot, it is not true that students and staff had not done so." Resp. 5. This statement is not logical, and it is not admissible evidence.

[5] Plaintiff does not present any contrary evidence to refute this fact, which speaks to the training environment at CCB. She acknowledges that "Dr. Bell may be right regarding the number of times" CCB students have traveled on the frontage road, but she says this figure "isn't based on

34. Dr. Bell has also opined that Plaintiff had demonstrated her ability to walk the route from the bus stop, past Chubby's, and to the Apartments "safely and proficiently" by doing so safely more than 100 times prior to the accident. *Id.* ¶ 34.[6]

35. Plaintiff testified during her deposition that she walked the area between the Apartments and Bowles (the street past Chubby's) "[m]ore than ten times a day." Mot. Ex. D at 5, ECF No. 143-4.

36. Plaintiff received instruction on orientation and mobility from the cane-travel instructors she had while at CCB. Def.'s Statement of Facts ¶ 35.[7]

37. Pearl Van Zandt, CCB's expert in vocational rehabilitation and training for the blind, has opined that aural feedback from the cane on the rough pavement of the frontage in front of Chubby's (compared to the smoother pavement of the sidewalk leading to the frontage and the

---

known evidence." Resp. 5. She then takes issue with the use of the term "successful trips" to describe a crossing in which a blind student was not injured. *Id.* Last, she states, "*Res ipsa loquitur*, Plaintiff wandered into the street and was hit by Defendant Powers." *Id.* Because there is no contention that Plaintiff was injured during a training exercise, this last statement could not possibly address the training environment and whether it was "inherently dangerous or inappropriate for CCB students" in any way.

[6] Plaintiff does not present any contrary evidence to refute this fact. She acknowledges that "Dr. Bell may be right regarding the number of times" Plaintiff has walked this route safely, but she says this figure "isn't based on known evidence." Resp. 6. Ignoring the qualifying language "prior to the accident," she then repeats her *res ipsa loquitur* statement. *Id.* These statements do not create a genuine issue of a material fact.

[7] Plaintiff does not present any contrary evidence to refute the fact that she received instruction on orientation and mobility, nor does she seem to dispute the quality of that instruction. Her disagreement appears to be that she did not walk this route "safely and proficiently" (though the undisputed fact is actually worded "safely and independently"). *See* Resp. 6.

8

street pavement) would provide a person using cane travel with "aural feedback" or "sound cues" for the pavement changes. Def.'s Statement of Facts ¶ 36.[8]

## II. Procedural History

Plaintiff initiated this action on December 12, 2015, ECF No. 1, and then filed a First Amended Complaint as a matter of course, ECF No. 11. The First Amended Complaint contained three claims against CCB: negligence (second claim); a violation of Title II of the Americans with Disabilities Act ("ADA") (third claim); and a violation of the Rehabilitation Act of 1973, as amended (fourth claim).

On March 11, 2016, CCB filed a Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), ECF No. 33. CCB argued that no facts support a duty of care to Plaintiff because of a special relationship; the exclusive remedy for Plaintiff's claim for injuries is the Colorado Premises Liability Act; and CCB is not a public entity under Title II and the Rehabilitation Act, but even if it was, Plaintiff failed to give notice of her claims as required by the Colorado Governmental Immunity Act. *See* Order, ECF No. 61 at 7–8 (summarizing arguments). Plaintiff responded, ECF No. 58, and CCB filed a reply, ECF No. 59.

On May 13, 2016, I issued an Order granting CCB's motion in part and denying it in part. ECF No. 61. I dismissed the Title II claim based on concessions by Plaintiff, but I held that Plaintiff plausibly stated claims for negligence and a violation of the Rehabilitation Act. *Id.* at 18. I made the following findings regarding CCB's duty to Plaintiff: (1) CCB owed no duty to Plaintiff

---

[8] Plaintiff does not present any contrary evidence to refute this fact. Her statement that "Plaintiff disputes that there is sufficient aural feedback or sound cues for the pavement changes," *see* Resp. 6, is conclusory and unsupported, even by Plaintiff's own Declaration. Therefore, it is inadequate under Rule 56(c),

9

based on the allegation that CCB purchased the Apartments in 2012; *id.* at 11; (2) no special relationship existed between CCB and Plaintiff by virtue of CCB's educational role because Plaintiff's injuries did not result from CCB's failure to perform "special skills," such as providing teaching and technology services to visually disabled people, *id.* at 12–13; and (3) Plaintiff's allegation that her assistive technology internship was an individualized education program for which CCB received federal funds, together with CCB's requirement that its students take public transportation to and from the Apartments, was enough to state a plausible claim that Plaintiff and CCB had a special relationship under the Rehabilitation Act for purposes of demonstrating CCB's duty of care, *id.* at 13–14. I left the door open to revisit the Rehabilitation Act claim. *See id.* at 14 n.3 ("CCB's argument . . . that it is not a public entity under the Rehabilitation Act . . . simply raises a question of fact that is not properly resolved in a Rule 12(b)(6) analysis."); *id.* at 17 (CCB's argument that it does not receive federal financial assistance also raises a question of fact that is not properly resolved under Rule 12(b)(6)).

After the parties conducted extensive discovery, CCB filed this Motion for Summary Judgment on August 17, 2018. ECF No. 143. Plaintiff filed her response on October 10, ECF No. 173, and the City submitted its reply on October 23, ECF No. 185. The Court conducted a Final Pretrial Conference on November 13 and entered the Final Pretrial Order on November 15, ECF No. 196. Trial is set to begin on February 11, 2019.

On October 12, Plaintiff filed the operative Second Amended Complaint, which adds claims against an additional defendant, Erma's. ECF No. 176. In the interest of judicial efficiency, the Court did not require CCB to refile this motion (and thus Plaintiff to refile her response) even

though Plaintiff filed a Second Amended Complaint, as the allegations and claims filed against CCB remain the same.

## **LEGAL STANDARD**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be

shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I.  First Claim: Negligence

In her Second Claim for Relief, Plaintiff asserts that CCB was negligent. Second Am. Compl. ¶¶ 65–71. The allegations relevant to this Defendant[9] are as follows:

- CCB "knew or should have known that visually disabled persons living at the Residence would use the public sidewalk on the east side of Lowell as a path of travel to gain access to the Residence." *Id.* ¶ 66.

- "The curb and sidewalk on the west side of Lowell was rebuilt after NFBC[] and CCB acquired the Residence and before Ms. Lewis participated in the CCB Assistive Technology internship program for the third time." ¶ 67.

- CCB "took no steps to render the curb and sidewalk on the east side of Lowell accessible to disabled person, including without limitation visually disabled persons such as Ms. Lewis living at the Residence." *Id.* ¶ 68.

---

[9] Within her Second Claim, Plaintiff also asserts a negligence claim against the City, NFBC, CZ Famco, and Chubby's; however, I address those claims in separate orders.

12

- CCB "acted with deliberate indifference to the rights of visually impaired persons living in the Residence, such as Ms. Lewis[,] including without limitation rights created by the ADA and [the Rehabilitation Act]." *Id.* ¶ 69.

- "Ms. Lewis suffered harms and losses because she lost her way while navigating by cane through the Frontage." *Id.* ¶ 70.

- CCB's "deliberate indifference . . . in failing to accommodate the needs of disabled persons, including without limitation Ms. Lewis and other visually disabled persons living at the Residence and/or traversing the Frontage on foot[,] proximately caused Ms. Lewis to suffer [enumerated] harms and losses." *Id.* ¶ 71.

CCB moves for summary judgment on the grounds that (1) it had no duty to improve the sidewalk or driveway area in front of Chubby's because CCB does not own that property; and (2) the evidence does not support Plaintiff's claim that CCB was negligent in denying disabled individuals (including her) access to the sidewalk area because CCB gave the students access through training. Mot. 1, 12–18.

Without distinguishing between these arguments, Plaintiff responds with a bald assertion that "CCB had a duty to ensure that the path of travel between its training center and its student housing was reasonably safe for all visually impaired students regardless of their experience and proficiency in cane travel from minute one of their arrival and enrollment in the program." Resp. 12; *see also id.* at 14 ("A Jury would not be unreasonable or contrary to law if it found that CCB failed in its duty to ensure that the path of travel between its training center and student housing was safe and accessible to students with a wide range of navigation skills, including those coming to CCB to learn how to use a white cane."). This would be a very broad duty indeed, since CCB's training center is two miles away from the Apartments. *See supra* Statement of Facts No. 8.

Plaintiff does not cite a single case in support of her assertion, nor does she include any legal analysis. *See* Resp. 12–15. Likewise, she does not even attempt to explain how CCB *could*

have taken any steps to render the curb and sidewalk on the east side of Lowell accessible to disabled persons, given that CCB does not own the property. Instead, she quotes from several expert opinions, which discuss existing standards, regulations, and laws and address whether the sidewalk was dangerous. Finally, without having established (or attempted to establish) a duty, Plaintiff suggests "appropriate actions" that CCB should have taken to render the path safe:

> CCB . . . should not have chosen to place its student housing on S. Lowell Blvd. Perhaps CCB should have contacted the City of Littleton and requested action be taken prior to placing waves of blind students (most out-of-state) into these apartments. Perhaps, CCB should have offered to pay the $4,100 to place an accessible sidewalk along the Chubby's driveway.

*Id.* at 15. In short, Plaintiff has presented an undeveloped theory of duty, with no legal support.

To recover on a negligence claim under Colorado law, Plaintiff must establish that (1) CCB owed her a legal duty of care; (2) CCB breached that duty; (3) Plaintiff was injured; and (4) CCB's breach caused that injury. *See Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). "Of these, duty is the threshold element. Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise." *Id.* "A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987).

"Whether a particular defendant owes a legal duty to a particular plaintiff is a question of law." *Id.* at 57. "The court determines, as a matter of law, the existence and scope of the duty— that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection." *Id.* (quoting *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980)). Colorado courts consider several factors to determine whether a legal duty existed upon a defendant: "(1) the risk involved, (2) the foreseeability and likelihood of injury as

weighed against the social utility of the [defendant's] conduct, (3) the magnitude of the burden of guarding against injury or harm, and (4) the consequences of placing the burden upon the [defendant]." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987) (alterations in original) (numbering added) (quoting *Smith v. City & Cty. of Denver*, 726 P.2d 1125, 1127 (Colo. 1986)). "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Whitlock*, 744 P.2d at 57.

As explained above, it is difficult to decipher the essence of Plaintiff's negligence theory, and she does not support it with case law or legal analysis. At the same time, CCB carefully and correctly articulates the deficiencies in Plaintiff's duty theory. *See* Mot. 12–15 (analyzing the relevant factors and discussing the need for a "special relationship' to impose liability for nonfeasance). Most importantly, "[t]he problem with Plaintiff's claimed duty" is that CCB "cannot perform it" because CCB does not own the land and thus cannot make changes to the sidewalk area. *See id.* at 14. "The defendant's ownership, possession and control of the injury-causing circumstances or instrumentality are relevant to determining whether a duty was owed." *Woods v. Delgar Ltd.*, 226 P.3d 1178, 1180 (Colo. App. 2009). It would make no sense for me to impose a duty on CCB to improve property that it does not own. And "[w]here the law imposes no duty on a defendant to act for the plaintiff's benefit, a negligence claim must fail." *Id.*

CCB also argues that Plaintiff's negligence claim must fail because CCB did "render" the east side of Lowell Boulevard accessible to its visually impaired students by giving them training, as reflected in the number of "successful" trips in that area. Mot. 15–18. The Second Amended Complaint does not contain allegations or claims regarding negligent training, and Plaintiff does

not even respond to this argument. Furthermore, I have already ruled that no special relationship existed between CCB and Plaintiff by virtue of CCB's educational role because Plaintiff's injuries did not result from CCB's failure to perform "special skills," such as providing teaching services to visually disabled people. *See* Order, ECF No. 61 at 12–13. Therefore, I need not address CCB's secondary negligence argument.

Considering the factors relevant to negligence, I conclude Plaintiff has not presented any facts to support the proposition that "reasonable persons would recognize a duty [on behalf of CCB] and agree that it exists." *See Whitlock*, 744 P.2d at 57.

## II. Second Claim: Violation of the Rehabilitation Act

In her next claim, Plaintiff asserts that CCB violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701. Second Am. Compl. ¶¶ 82–87 (Fourth Claim for Relief). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) ("Nondiscrimination under Federal Grants and programs"). "Because [Title II and section 504] involve the same substantive standards," courts frequently analyze them together. *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009); *see also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999) ("Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge.").

To state a claim under the Rehabilitation Act, Plaintiff must first prove the elements for a Title II claim, namely that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (elements for a Title II claim); *see also Miller ex rel. S.M.*, 565 F.3d at 1245 (making clear that the elements for a Title II claim apply to a Rehabilitation Act claim). Plaintiff must also prove an additional element: the program or activity receives federal financial assistance. *See Hollonbeck v. United States Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

As a matter of law, Plaintiff has not articulated a viable claim against CCB under the Rehabilitation Act. In fact, I cannot make any sense out of her claim that CCB somehow "denied [her] access" to the CCB campus and the area in front of Chubby's. Plaintiff first articulates what she perceives to be the enormous risks of traveling by public transportation between CCB's training center and the Apartments—travel that CCB requires for participants in its program. *See* Resp. 11–12. She then states (without citation to case law) that the first three elements of a Rehabilitation Act claim are satisfied:

> Visually impaired prospective students (and their vocational rehabilitation counselors) should fairly consider this too great a risk to their health safety, and life to learn to navigate at CCB and they should not enroll in the CCB program "*solely by reason of her or his disability*," visual impairment and they would be "*excluded from the participation in*" and "*be denied the benefits of*" the CCB blindness training program. As ironic as it sounds, the dangerous path of travel in front of the CCB student housing is a barrier to entry into the CCB training program for the Blind, for visually impaired persons. It would be an act of negligence to recommend the CCB program to a visually impaired person.

Resp. 12.

17

Even if this unsupported statement was enough to create a genuine issue as to a material fact for the first three elements, Plaintiff has not produced admissible evidence to create a genuine issue for the last element: the receipt of federal financial assistance. The Tenth Circuit has long held that "the program or activity in question" must receive federal financial assistance to state a viable claim under the Rehabilitation Act. *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

As explained in footnote 1, *supra*, Plaintiff's only "evidence" that CCB "receive[s] federal financial assistance" is an unauthenticated printout from the U.S. Department of Education website. I have studied this printout carefully, and I do not see how it establishes anything relevant to this case, let alone receipt of federal funds by CCB. Plaintiff quotes CCB's statement in a discovery response that it receives funds from "state run vocational rehabilitation agencies in the State [where] the CCB resident/participant" resides. Resp. 10. She then makes an unwarranted jump: "*As such*, CCB receives indirect Federal funding from the U.S. Department of Education distributed through Federal vocational rehabilitation grants to state agencies for the blind and vocational rehabilitation." *Id.* (emphasis added). Plaintiff cites numerous cases and regulations for the proposition that it does not matter whether the federal financial assistance is direct or indirect. *See id.* But that argument is premature, as she has not established any federal aid, direct or indirect, to CCB.

In my earlier Order on CCB's Motion to Dismiss, I allowed Plaintiff to pursue her Rehabilitation Act claim under the Rule 12(b)(6) standard, because there was still a fact question as to whether CCB received federal financial assistance. *See* Order, ECF No. 161 at 14 n.3, 17. After extensive discovery, however, Plaintiff has not produced any admissible evidence to satisfy

this element, as required by Rule 56. Plaintiff's failure to show that CCB received any federal funding is fatal to her claim against CCB under the Rehabilitation Act.

## **CONCLUSION**

Defendant Colorado Center for the Blind's Motion for Summary Judgment [filed August 17, 2018; ECF No. 143] is **granted**. All claims filed against CCB are dismissed with prejudice.

Entered and dated at Denver, Colorado, this 30th day of November, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty