IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 1:15-CV-02692-MEH

LUPITA LEWIS,

      Plaintiff,

v.

JAMES T. POWERS;
CITY OF LITTLETON, COLORADO;
NATIONAL FEDERATION OF THE BLIND, COLORADO;
COLORADO CENTER FOR THE BLIND;
CZ FAMCO HOLDINGS LLC; and
ERMA'S MEXICAN FOOD, INC.,

      Defendants.

---

## ORDER ON DEFENDANT NATIONAL FEDERATION OF THE BLIND, COLORADO'S MOTION FOR SUMMARY JUDGMENT

**Michael E. Hegarty, United States Magistrate Judge**

      Plaintiff Lupita Lewis, a visually impaired woman, was injured in December 2013 in an automobile/pedestrian accident. Plaintiff alleges that she was returning from the Colorado Center for the Blind ("CCB") in Littleton, Colorado, to her residence when she became disoriented on the poorly designed and maintained sidewalk area in front of Chubby's restaurant. She wandered into the street and was struck by a vehicle driven by Defendant James Powers. In addition to Mr. Powers and the CCB, Plaintiff is suing the City of Littleton, Colorado (the "City"); the National Federation of the Blind, Colorado ("NFBC"); CZ Famco Holdings LLC ("CZ Famco"); and Erma's Mexican Food, Inc. ("Erma's").

      All Defendants except for Mr. Powers and Erma's have filed motions to dismiss and/or for summary judgment. Before the Court here is Defendant National Federation of the Blind,

Colorado's Motion for Summary Judgment [filed August 20, 2018; ECF No. 148]. Plaintiff sues NFBC for negligence and a violation of the Rehabilitation Act of 1973. For the reasons set forth below, I **grant** NFBC's motion and dismiss all claims filed against NFBC with prejudice.

## BACKGROUND

### I. Factual Background

The evidence submitted reveals the following facts viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter. For the facts articulated by Plaintiff, I consider only the well-supported facts contained in her response brief—not the unsupported facts for which she provided no record citations. *See, e.g.*, Resp., ECF No. 177 at 1–4. As the responding party, it is Plaintiff's burden "to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)). The Court has no obligation "to comb the record" to make Plaintiff's arguments for her. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

1. The Court's Order granting the City's Combined Motion to Dismiss and Motion for Summary Judgment contains a detailed Statement of Facts as to the accident on December 12, 2013; Plaintiff's residence at the McGeorge Mountain Terrace Apartments at 5871 South Lowell Boulevard, Littleton, Colorado (the "Apartments"); the surrounding area; and each Defendant's knowledge of the area and prior events therein before the accident. I incorporate that Statement of Facts by reference here because it includes Plaintiff's positions and admissions and provides important background information. Even so, I am mindful of the parties' respective burdens under

Federal Rule of Civil Procedure 56, and my Order considers the evidence presented within the parameters of that Rule.

2.      NFBC is a non-profit organization whose members and leaders provide advocacy and support to blind and visually impaired Coloradans across the State.  Mot., Def.'s Statement of Facts ¶ 1, ECF No. 143 (admitted in Pl.'s Resp. to Def.'s Statement of Facts 4, ECF No. 177).

3.      NFBC does not receive any federal funding or financial assistance.  *Id.* ¶ 2.  *See* Mot. Ex. B ¶ 15 (Affidavit of Scott Labarre, President of NFBC, stating that NFBC has "never received any federal, financial assistance" since he became President in 2005).[1]

4.      At the time of the accident, Plaintiff was taking part in an Assistive Technology Internship Program provided by CCB.  Def.'s Statement of Facts ¶ 3 (also admitted).

5.      As part of the program through CCB, Plaintiff attended training sessions at a CCB facility at 2233 West Shepperd Avenue, Littleton, Colorado.  *Id.* ¶ 6 (also admitted).

6.      Non-party Rocky Mountain Center for the Blind ("RMCB") owns the McGeorge Mountain Terrace Apartments (the "Apartments") located at 5871 South Lowell Boulevard, Littleton, Colorado.  *Id.* ¶ 7 (also admitted).

---

[1] Plaintiff does not present any contrary evidence to refute this fact.  Her response states, "NFBC is a beneficiary of the federal funding from the U.S. Department of Education distributed through Federal vocational rehabilitation grants to state agencies for the blind and vocational rehabilitation."  Resp. 4.  But this statement is wholly unsupported.  Plaintiff attaches a one-page printout from a U.S. Department of Education website on "Vocational Rehabilitation State Grants" with the following sentence highlighted:  "Note:  in 24 states, awards are made to both the state agency for the blind and the state general agency; in the other 32 states and territories, funds are distributed to a combined agency only."  *Id.* Ex. 37, ECF No. 177-10.  Nothing on the face of the printout mentions NFBC or directly or indirectly links NFBC to any federal funding.

7.      The Apartments were and are to be used to house students taking part in CCB's programs.  *Id.* ¶ 8 (also admitted).

8.      Plaintiff was injured while traveling between the CCB facility on West Shepperd Avenue and the Apartments.  *Id.* ¶ 9 (also admitted).

9.      While walking north on Lowell Boulevard toward the Apartments, Plaintiff became disoriented on the driveway of a Chubby's Mexican Restaurant.  *Id.* ¶ 10 (also admitted).

10.     CZ Famco owns the property upon which Chubby's is located.  *Id.* ¶ 11 (also admitted).

11.     Plaintiff states that the sidewalk along the west side of Chubby's is in poor shape and does not contain a discernable curb between the sidewalk and the street.  *Id.* ¶ 12 (also admitted).

12.     Plaintiff lost her way along the Chubby's driveway and walked into traffic on Lowell Boulevard.  *Id.* ¶ 13 (also admitted).

The parties vehemently disagree as to the nature of the relationship between CCB and NFBC.  NFBC insists that it is a "completely separate" entity that shares office space in the same building, and it disavows that it operates or runs the CCB internship program in which Plaintiff was enrolled.  Def.'s Statement of Facts ¶¶ 4, 5.  But Plaintiff presents contrary evidence (including numerous statements by Mr. Labarre, President of NFBC) that the entities are closely associated.  *See* Resp. 4–5 & Exs. 40, 41, 43, 44, ECF Nos. 177-14, 177-15, 177-17, 177-18.  There is undoubtedly a genuine dispute here, but I need not delve into it because this fact is not material for purposes of this motion.  In a separate Order issued today, I find that CCB is not liable to

Plaintiff, and I dismiss the negligence and Rehabilitation Act claims against CCB. Accordingly, it would be futile for Plaintiff to link NFBC to CCB for liability purposes.

## II.    Procedural History

Plaintiff initiated this action on December 12, 2015, ECF No. 1, and then filed a First Amended Complaint as a matter of course, ECF No. 11. The First Amended Complaint contained three claims against NFBC: negligence (second claim); a violation of Title II of the Americans with Disabilities Act ("ADA") (third claim); and a violation of the Rehabilitation Act of 1973, as amended (fourth claim).

After conducting discovery, NFBC filed a Motion for Summary Judgment on December 21, 2016. ECF No. 73. NFBC argued that it did not purchase and does not own the Apartments; it has no relationship whatsoever with Plaintiff and thus does not owe her a duty of care; it is not a public entity as required for the ADA claim; and it did not operate a program or activity from which Plaintiff was excluded or denied benefits as required for the Rehabilitation Act claim. *See* Order, ECF No. 84 at 4–5 (summarizing arguments). Plaintiff responded, ECF No. 78, and CCB filed a reply, ECF No. 83.

On March 15, 2017, I issued an Order granting NFBC's motion in part and denying it in part. ECF No. 84. I dismissed the ADA claim because Plaintiff did not raise any genuine issues of material fact as to whether NFBC is a public entity. *Id.* at 17. For the negligence claim, I found that Plaintiff had raised a genuine issue of material fact as to whether NFBC owned the Apartments, from which Plaintiff was required by the CCB to take public transportation. *Id.* at 12–13. I also found that the Court had "insufficient information at this stage" to determine whether disputed facts exist as to whether NFBC's potential ownership of the Apartments imposed a legal

duty on NFBC toward Plaintiff; information to analyze the factors relating to duty was also lacking. *Id.* at 12–14. For the Rehabilitation Act claim, I found that Plaintiff had raised a genuine issue of material fact as whether NFBC operated or participated in CCB's program. *Id.* at 14–16. I made no findings on the merits of either remaining claim.

Additional discovery proceeded, and NFBC filed this Motion for Summary Judgment on August 20, 2018. ECF No. 148. Plaintiff filed her response on October 10, ECF No. 177, and the City submitted its reply on October 29, ECF No. 189. The Court conducted a Final Pretrial Conference on November 13 and entered the Final Pretrial Order on November 15, ECF No. 196. Trial is set to begin on February 11, 2019.

On October 12, Plaintiff filed the operative Second Amended Complaint, which adds claims against an additional defendant, Erma's. ECF No. 176. In the interest of judicial efficiency, the Court did not require NFBC to refile this motion (and thus Plaintiff to refile her response) even though Plaintiff filed a Second Amended Complaint, as the allegations and claims filed against NFBC remain the same.

## **LEGAL STANDARD**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

<u>ANALYSIS</u>

## I.    First Claim:  Negligence

In her Second Claim for Relief, Plaintiff asserts that NFBC was negligent.  Second Am.

Compl. ¶¶ 65–71.  The allegations relevant to this Defendant[2] are as follows:

- NFBC "knew or should have known that visually disabled persons living at the Residence would use the public sidewalk on the east side of Lowell as a path of travel to gain access to the Residence."  *Id.* ¶ 66.

- "The curb and sidewalk on the west side of Lowell was rebuilt after NFBC[] and CCB acquired the Residence and before Ms. Lewis participated in the CCB Assistive Technology internship program for the third time." ¶ 67.

- NFBC "took no steps to render the curb and sidewalk on the east side of Lowell accessible to disabled person, including without limitation visually disabled persons such as Ms. Lewis living at the Residence."  *Id.* ¶ 68.

- NFBC "acted with deliberate indifference to the rights of visually impaired persons living in the Residence, such as Ms. Lewis[,] including without limitation rights created by the ADA and [the Rehabilitation Act]."  *Id.* ¶ 69.

- "Ms. Lewis suffered harms and losses because she lost her way while navigating by cane through the Frontage."  *Id.* ¶ 70.

- NFBC's "deliberate indifference . . . in failing to accommodate the needs of disabled persons, including without limitation Ms. Lewis and other visually disabled persons living at the Residence and/or traversing the Frontage on foot[,] proximately caused Ms. Lewis to suffer [enumerated] harms and losses."  *Id.* ¶ 71.

In moving for summary judgment, NFBC argues that it does not own the Apartments and

had no relationship with Plaintiff, let alone a special relationship; therefore, it had not duty to act

for her benefit.  NFBC also argues that it had no ability to repair or maintain the sidewalk area

where Plaintiff became disoriented because it does not own or control the property.  Mot. 8–13.

---

[2] Within her Second Claim, Plaintiff also asserts a negligence claim against the City, CCB, CZ Famco, and Chubby's; however, I address those claims in separate orders.

Plaintiff's negligence theory seems to be that NFBC (through its connection to CCB) had a "duty to ensure that the path of travel between its training center and its student housing were reasonably safe for all visually impaired students regardless of their experience and proficiency in cane travel upon their arrival and enrollment in the program." Resp. at 18; *accord id.* at 20 (referencing NFBC's "duty to ensure that the path of travel between its training center and student housing was safe and accessible to students with a wide range of navigation skills, including those coming to CCB to learn how to use a white cane"). Notably, the parties agreed in the briefing on CCB's Motion for Summary Judgment that CCB's training center is two miles away from the Apartments; consequently, Plaintiff's articulation of NFBC's duty seems vastly overbroad from the starting block.

In any event, Plaintiff's response expands upon that purported duty through scattered references to what NFBC *should* have done. *See, e.g.*, *id.* at 21 ("NFBC should have taken appropriate actions to render the path of travel safe for travel or should not have chosen to place its student housing on S. Lowell Blvd."); *id.* ("NFBC had a duty to take action to protect current and future CCB students. . . . They should have contacted the City of Littleton and requested action be taken prior to CCB placing waves of blind students (most out-of-state) into these apartments. Perhaps, NFBC should have offered to pay the $4,100 to place an accessible sidewalk along the Chubby's driveway."); *id.* ("At a minimum, NFBC should have removed its name from the training center until it was satisfied that students at CCB had a safe path of travel to shopping and between the training center and the student housing.").

To recover on a negligence claim under Colorado law, Plaintiff must establish that (1) NFBC owed her a legal duty of care; (2) NFBC breached that duty; (3) Plaintiff was injured;

and (4) NFBC's breach caused that injury. *See Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). "Of these, duty is the threshold element. Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise." *Id.* "A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987).

"Whether a particular defendant owes a legal duty to a particular plaintiff is a question of law." *Id.* at 57. "The court determines, as a matter of law, the existence and scope of the duty— that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection." *Id.* (quoting *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980)). Colorado courts consider several factors to determine whether a legal duty existed upon a defendant: "(1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, (3) the magnitude of the burden of guarding against injury or harm, and (4) the consequences of placing the burden upon the [defendant]." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987) (alterations in original) (numbering added) (quoting *Smith v. City & Cty. of Denver*, 726 P.2d 1125, 1127 (Colo. 1986)). "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Whitlock*, 744 P.2d at 57.

If Plaintiff's negligence claim is premised upon nonfeasance, as it seems to be here, then she must establish a "special relationship" with NFBC. *See N.M. ex rel. Lopez v. Trujillo*, 397 P.3d 370, 375 (Colo. 2017) (explaining that "[a]bsent such a special relationship, . . . as a matter

of law and in accordance with [Colorado] precedent," a defendant does not owe a plaintiff a duty in cases of nonfeasance). *See generally* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984) (distinguishing active misconduct/misfeasance from a failure to take steps to protect someone from harm/nonfeasance).

Plaintiff includes only one legal citation to support her negligence theory: "Where damage is to be foreseen, there is a duty to act so as to avoid it." *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980) (citing *MacPherson v. Buick Motor Co.*, 111 N.E.1050 (N.Y. 1916)). She does not analyze the negligence factors or seek to establish a special relationship with NFBC. She makes only a conclusory statement that NFBC's "good name and recommendation of endorsing CCB by placing their name on the training center building and recommending the program created a duty to CCB students." Resp. 21. She also quotes from several expert opinions, which discuss existing standards, regulations, and laws and address whether the sidewalk was dangerous. *Id.* at 19–20.

In addition to being unsupported, Plaintiff's negligence theory is flawed for numerous reasons. First, her theory simply assumes NFBC had notice that the sidewalk area was dangerous, without presenting any evidence to create a genuine issue of material fact on that important issue. *See, e.g.*, *id.* at 22 ("NFBC employees, staff, officers and board members participated in the choice of the location of the CCB student housing in early 2012. By December 2013, they knew or should have known of the danger presented by the unsafe path of travel in front of the CCB student housing."). But the Statement of Facts in the Orders issued contemporaneously with this one establish otherwise. None of the Defendants were aware that Plaintiff or her fellow students were

having an issue with this sidewalk area; at the same time, Plaintiff was familiar with the area and

she and her fellow students had navigated it many times without being hit or injured.

Second, Plaintiff does not address the undisputed fact that NFBC did not own the property

upon which the sidewalk area was located; CZ Famco does. *See supra* Statement of Facts No. 10.

"The defendant's ownership, possession and control of the injury-causing circumstances or

instrumentality are relevant to determining whether a duty was owed." *Woods v. Delgar Ltd.*, 226

P.3d 1178, 1180 (Colo. App. 2009). It would make no sense for me to impose a duty on NFBC to

improve property that it does not own. And "[w]here the law imposes no duty on a defendant to

act for the plaintiff's benefit, a negligence claim must fail." *Id.*

Third, Plaintiff does not even attempt to explain how NFBC *could* have taken any steps to

render the curb and sidewalk on the east side of Lowell accessible to disabled persons, given that

NFBC does not own the property. Without having established (or attempted to establish) a duty,

Plaintiff simply suggests "appropriate actions" that NFBC should have taken to render the path

safe:

> NFBC . . . should not have chosen to place its student housing on S. Lowell Blvd.
> . . . They should have contacted the City of Littleton and requested action be taken
> prior to placing waves of blind students (most out-of-state) into these apartments.
> Perhaps, NFBC should have offered to pay the $4,100 to place an accessible
> sidewalk along the Chubby's driveway.

Resp. 21.

In short, Plaintiff has presented an undeveloped theory of duty, with no legal support. At

the same time, NFBC carefully and correctly articulates the deficiencies in Plaintiff's duty theory,

including her inability to establish the requisite special relationship for this nonfeasance case. *See*

Mot. 8–13. In the course of that analysis, NFBC correctly notes that there was a genuine issue of

material fact as to whether NFBC owned the Apartments when I issued my Order on its earlier summary judgment motion. *See id.* at 10–11. I held off on resolving the larger question as to whether a special relationship existed between NFBC and Plaintiff pending resolution of this ownership question. It is now clear that RMCB, not NFBC, owns the Apartments—eliminating that potential basis for a legal relationship between NFBC and Plaintiff. *See supra* Statement of Facts No. 6.

Considering the factors relevant to negligence, I conclude Plaintiff has not presented any facts to support the proposition that "reasonable persons would recognize a duty [on behalf of NFBC] and agree that it exists." *See Whitlock*, 744 P.2d at 57.

## II.    Second Claim:  Violation of the Rehabilitation Act

In her next claim, Plaintiff asserts that NFBC violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701. Second Am. Compl. ¶¶ 82–87 (Fourth Claim for Relief). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) ("Nondiscrimination under Federal Grants and programs"). "Because [Title II and section 504] involve the same substantive standards," courts frequently analyze them together. *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009); *see also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999) ("Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge.").

13

To state a claim under the Rehabilitation Act, Plaintiff must first prove the elements for a Title II claim, namely that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (elements for a Title II claim); *see also Miller ex rel. S.M.*, 565 F.3d at 1245 (making clear that the elements for a Title II claim apply to a Rehabilitation Act claim). Plaintiff must also prove an additional element: the program or activity receives federal financial assistance. *See Hollonbeck v. United States Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

As a matter of law, Plaintiff has not articulated a viable claim against NFBC under the Rehabilitation Act. In fact, I cannot make any sense out of her claim that NFBC somehow denied her access to the CCB campus and the area in front of Chubby's. Plaintiff first articulates what she perceives to be the enormous risks of traveling by public transportation between CCB's training center and the Apartments—travel that CCB requires for participants in its program. *See* Resp. 15–16. She then states (without citation to case law) that the first three elements of a Rehabilitation Act claim are satisfied:

> Visually impaired prospective students (and their vocational rehabilitation counselors) should fairly consider this too great a risk to their health safety, and life to learn to navigate at CCB and they should not enroll in the CCB program "*solely by reason of her or his disability*," visual impairment and they would be "*excluded from the participation in*" and "*be denied the benefits of*" the CCB blindness training program. As ironic as it sounds, the dangerous path of travel in front of the CCB student housing is a barrier to entry into the CCB training program for the Blind, for visually impaired persons. It would be an act of negligence to recommend the CCB program to a visually impaired person. It is an act of nonfeasance that NFBC has not taken affirmative actions to ensure that no student

is unreasonably endangered by this unsafe path of travel between the training center and the student housing.

Resp. 16–17.

Even if this unsupported statement was enough to create a genuine issue as to a material fact for the first three elements, Plaintiff has not produced admissible evidence to create a genuine issue for the last element: the receipt of federal financial assistance. The Tenth Circuit has long held that "the program or activity in question" must receive federal financial assistance to state a viable claim under the Rehabilitation Act. *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

As explained in footnote 1, *supra*, Plaintiff's only "evidence" that NFBC "receive[s] federal financial assistance" is an unauthenticated printout from the U.S. Department of Education website. I have studied this printout carefully, and I do not see how it establishes anything relevant to this case, let alone receipt of federal funds by NFBC. Plaintiff quotes CCB's statement in a discovery response that it receives funds from "state run vocational rehabilitation agencies in the State [where] the CCB resident/participant" resides. Resp. 14. She then makes an unwarranted jump: "*As such*, CCB/NFBC receives indirect Federal funding from the U.S. Department of Education distributed through Federal vocational rehabilitation grants to state agencies for the blind and vocational rehabilitation." *Id.* (emphasis added). Plaintiff cites numerous cases and regulations for the proposition that it does not matter whether the federal financial assistance is direct or indirect. *See id.* But that argument is premature, as she has not established any federal aid, direct or indirect, to NFBC (or CCB). Plaintiff's failure to show that NFBC received any federal funding is fatal to her claim against NFBC under the Rehabilitation Act.

## CONCLUSION

Defendant National Federation of the Blind, Colorado's Motion for Summary Judgment [filed August 20, 2018; ECF No. 148] is **granted**. All claims filed against NFBC are dismissed with prejudice.

Entered and dated at Denver, Colorado, this 30th day of November, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty